### RAMON CAMPOS v. THE STATE.

No. 3355. Decided June 20, 1906.

Motion for Rehearing Overruled. November 8, 1906.

**1.—Murder in First Degree—Jury and Jury Law—Reading Newspaper—Hearsay.**

Where upon appeal from a conviction of murder, defendant's bill of exceptions did not show that the juror upon whom he exhausted his peremptory challenge, received his information on which he formed his opinion from any witnesses or testimony in the case, but from reading a newspaper; and the juror stated that notwithstanding his opinion he could try the case fairly and impartially; and where defendant's bill of exceptions did not show wherein the jurors defendant was forced to accept were objectionable, there was no error.

**2.—Same—Evidence—Res Gestae—Wounds Inflicted.**

Where upon trial for murder, the evidence showed that at the same time of the homicide, the sister of deceased was killed by the defendant, there was no error to show the circumstances attending the killing of both, and the wounds that were inflicted.

**3.—Same—Evidence—Tone of Voice.**

Upon trial for murder it was competent for the witness to state the tone of voice in which the parties may have expressed themselves, whether an angry tone or otherwise.

**4.—Same—Confession—One Transaction—Res Gestae—Motive.**

Upon trial for murder, where the evidence showed that the killing of deceased and her sister at the same time by the defendant was one transaction, the confession of defendant relating to the killing of both, after being properly warned was admissible to show the animus, motive and intent of defendant in killing the deceased.

**5.—Same—Evidence—Impeaching Defendant's Witness—Did Not Remember.**

Upon trial for murder where defendant's witness testified that defendant was drunk on the day of the homicide; and upon cross-examination stated that he did not remember whether he had stated to the impeaching witness that the defendant was not drunk on said day, there was no error in permitting the State to prove by the impeaching witness that defendant's said witness on said occasion told him that the defendant was not drunk on the day of the homicide.

**6.—Same—Charge of Court—Recent Use of Ardent Spirits—Temporary Insanity.**

Where upon trial for murder the court instructed the jury that if defendant was laboring under temporary insanity because of the recent use of ardent spirits, they might consider the same for the purpose of determining the degree of murder of which they might find him guilty, and in mitigation of the penalty attaching to the offense; and that in murder in the first degree the intent to kill must have been formed with a calm cool, deliberate mind, and if defendant slew deceased when his mind was not cool but disturbed by passion he would be guilty of murder in the second degree, there was no error in refusing a requested charge calling the attention of the jury to a disturbed mind produced by the use of intoxicating liquor. Following Evers v. State, 31 Texas Crim. Rep., 318.

Appeal from the District Court of Karnes. Tried below before the Hon. J. C. Wilson.

Appeal from a conviction of murder in first degree; penalty, death. The opinion states the case.

*A. J. Pritchard* and *A. J. Bell,* for appellant.—On question of killing another person at the time of the homicide of deceased: Green v. Com. of Kentucky, 33 S. W. Rep., 100.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal. The circumstances of the killing briefly stated, show that appellant was enamored of deceased, and wanted to marry her. She may have favored his suit for a time, but a day or two before the killing, she appears to have slighted him, or at least he believed so, and on the day of the homicide she and her sister were traveling in a buggy and overtook appellant on the road, and he got in the back of the buggy, with the permission of deceased (Martha McHaney) and after some conversation, a dance which occurred the night before was mentioned. She asked him if he enjoyed the dance, and he replied he did not because she was not there, and then something was said; and immediately he caught her with one hand and slashed her throat with a razor in the other hand, which caused her death. The other girl, Ada McHaney, then jumped out of the buggy, and he pursued

and shot her.   This conviction was on account of the killing of Martha McHaney.

The first bill of exceptions relates to the empanelment of the jury. When the juror Edgar was brought forward, it was shown by him that he had an opinion as to the guilt or innocence of the defendant, which he had expressed to several; and that this opinion was formed from reading an account of the homicide in the Karnes County News. An extract from this paper published at the time is contained in the bill of exceptions, and purports to state the facts connected with the homicide.   The juror stated that from this he had formed an opinion, and that it would require evidence to remove this opinion. The bill further shows the court held the juror qualified, and appellant was required to exhaust a peremptory challenge upon him.   The bill further shows, according to appellant's statement, that after the challenges were exhausted, he was forced to accept three jurors who were not acceptable to him, to wit: J. T. Rowan, Allen Tobin and M. F. Flint.   The court in explaining this bill states that the opinion formed was from newspaper or hearsay testimony, and that the juror stated that he could go on the jury and give defendant a fair and impartial trial governed by the evidence as developed on the trial and the law as given in charge by the court.   And further that no objection was made to the jurors Rowan and Flint.

We believe, under the rule laid down in this State, that the juror was not shown to be disqualified; that is, the bill does not show that the juror received his information on which he formed his opinion from any witness or testimony in the case, but from hearsay.   He also stated that, notwithstanding his opinion he would try the case fairly and impartially.   Suit v. State, 30 Texas Crim. App., 319. As to the other proposition, the mere statement that the juror was objectionable to appellant would not show that he was.   The court explained that as to two of the jurors, to wit: Rowan and Flint, no objection was urged.   Then it appears that some objection was urged to Tobin, but what objection is not stated.   For ought that appears he was an absolutely fair and impartial juror.

Appellant reserved a number of exceptions to the action of the court permitting the State to prove the killing of Ada McHaney. The objection urged being that appellant was not on trial for the murder of Ada McHaney, but of Martha McHaney.   As to all of these bills of exception it is only necessary to state what the bills show, that the homicide occurred at the same time, and the killing of Ada McHaney was a part of the res gestæ of the killing of Martha McHaney.   And in such case it was not improper to show the circumstances attending the death of both, and to show Ada McHaney was killed.   The bill objects to the detail of the wounds inflicted on her.   Of course, the court restricted the conviction to the case as charged in the indictment.   Morris v. State, 30 Texas Crim. App., 95; McCray v. State, 44 S. W. Rep., 170; Wilkerson v. State, 31

Texas Crim. Rep., 86; Leeper & Powell v. State, 29 Texas Crim. App., 63; Crews v. State, 34 Texas Crim. Rep., 545.

We think it was competent for the witness to state the tone of voice in which the parties may have expressed themselves, whether an angry tone or otherwise. White's Ann. Code Crim. Proc., sec. 1093½. sub. 2; Burt v. State, 38 Texas Crim. Rep., 397;; Meyers v. State, 37 Texas Crim. Rep., 208; Powers v. State, 23 Texas Crim. App., 42; Bennett v. State, 39 Texas Crim. Rep., 639; Miller v. State, 18 Texas Crim. App., 232.

Appellant objected to the introduction in evidence of the confessions of the appellant, both as to the killing of Martha McHaney and Ada McHaney. We believe the confessions of appellant were admissible, as to the killing of both said persons. It appears that proper warning was given, and as heretofore stated, the killing of Ada McHaney was so closely connected with and interwoven with the killing of Martha McHaney as to be res gestæ of said killing, and was admissible to show the animus motive and intent of appellant in the killing of the latter.

Appellant objected to the State's witness Marcus Hines testifying that he had a conversation with Charley Campos, in which Charley stated that his brother Ramon was not drunk on the day of the killing. This was objected to by appellant on the ground that it was hearsay, and not admissible against appellant; and because it was not impeaching, that is, testimony impeaching Charley Campos, because he stated that he did not remember whether or not he had made such statement; that he was scared at the time he talked to witness Marcus Hines, and did not remember what he said to him. The court explains the introduction of this testimony by stating that Charley Campos was introduced by appellant, and testified that appellant was drunk on the day of the homicide. This witness on cross-examination was asked if he had not stated to witness Hines that his brother was not drunk on said day. He stated that he did not remember. The State was then permitted to prove by Hines that he told him on said occasion that Ramon was not drunk on the day of the homicide. This testimony was admissible. It was not necessary that the witness deny making the statement. If he states that he does not remember making the statement he can be contradicted. White's Ann. Code Criminal Procedure, section 1116, subdivision 2.

Appellant complains of the charge of the court on temporary insanity produced by the recent use of ardent spirits. In the court's charge, the court quoted the statute on the subject, and also instructed the jury as to the nature of the insanity which would reduce the degree of murder, or which would mitigate the punishment affixed to the offense; and also defined the nature of the insanity which would authorize the jury to consider the same in finding the degree of murder or in mitigation of the penalty. And then instructed the jury, as follows: "Now, if you believe from the evidence in this

case, that the defendant at the time of the commission of the offense for which he is on trial, if you find him guilty of such offense, was laboring under temporary insanity as above defined, produced by the voluntary recent use of ardent spirits, you will take such temporary insanity into consideration in determining the grade of the offense, if any, that the defendant may be found guilty of, and in mitigation of the penalty attaching to the offense, if any." The court had previously defined murder of the first and second degrees, and instructed the jury with reference thereto, applying the law to the facts of the case. We think the instructions on the subject of insanity produced by the recent use of intoxicating liquor, in connection with the other charges of the court, were sufficient; and there was no necessity to give the requested special instruction. The jury had been previously informed, in order for appellant to be guilty of murder in the first degree, the intent to kill and the execution thereof must have been formed in a cool, calm and deliberate mind; and subsequently instructed the jury that if defendant slew deceased when his mind was not cool but disturbed by passion, he would be guilty of murder in the second degree. It is true the requested charge directly called the attention of the jury to a disturbed mind, produced by the use of intoxicating liquors, but evidently under the charge as given, the jury would consider a state of mind caused by the use of liquors, in determining the condition thereof, when the intent to kill was formed, inasmuch as the court told the jury in case of murder, if appellant was laboring under temporary insanity because of the recent use of ardent spirits, they might consider the same for the purpose of determining the degree of murder of which they might find him guilty. The charge given was in accordance with the rule laid down in Evers v. State, 31 Texas Crim. Rep., 318.

We have carefully examined the court's charge, and the requested charges which were refused, and, in our opinion, the charge of the court fully covered all the phases of the case presented by the evidence, and the court was not required to give the requested special instructions.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.

[Motion for rehearing overruled at Tyler without written opinion, November 8, 1906.—Reporter.]