### C. A. REDMAN v. THE STATE.

No. 4091. Decided February 19, 1908.

**1.—Murder—Evidence—Defensive Theory.**

Upon trial for murder where a controversy arose as to whether the defendant was the father of the child of the State's witness, the defendant claiming that he had killed deceased, because the latter had charged him with being the author of the shame of said witness, who was his first cousin; defendant also claiming this as adequate cause; it was error to refuse defendant to show by testimony that his conduct towards said witness in the presence of others was decorous, decent and proper; to controvert the issue as to whether or not he was the author of her shame.

**2.—Same—Evidence—Self-Serving Declarations.**

Upon trial for murder, where the defense was insulting language towards a female relative, there was no error in excluding declarations of defendant on the night before the killing that he believed the deceased was lying about the female about whom the latter had used insulting language.

**3.—Same—Charge of Court—Burden of Proof—Reasonable Doubt.**

Upon trial for murder where among other defenses, the defendant claimed adequate cause on account of insulting language towards a female relative, it was nevertheless the duty of the court under article 765, Code Criminal Procedure, to charge the reasonable doubt with reference to all grades of homicide, and it was error to assume in his charge that the defendant was guilty of manslaughter.

**4.—Same—Charge of Court—Adequate Cause—Passion—Murder in Second Degree.**

Upon trial for murder, it was error in charging upon murder in the second degree, that the killing must be in a sudden transport of passion; the statute of this State only requires that the killing be done in passion aroused without adequate cause. Following Kannamacher v. State, 51 Texas Crim. Rep., 118.

**5.—Same—Charge of Court—Adequate Cause—Provocation—Insulting Language to Female Relative.**

Upon trial for murder where the evidence showed that the only adequate cause for reducing the homicide to manslaughter was insulting words concerning a female relative, the court erred in his charge in instructing the jury as to other provocations than insulting language to a female relative.

**6.—Same—Charge of Court—Manslaughter.**

Where upon trial for murder the evidence showed that the defendant had been informed of insulting language of the deceased towards a female relative of

defendant; that he met deceased several times thereafter, and finally called on him for an explanation, when the deceased repeated said language and defendant killed him, the court should have charged that if defendant in the first instance did not believe said insulting words, and sought out the deceased to ask him if he uttered such slanderous statements, and being apprized that he did so, repeated the same, and the defendant then under the immediate influence of sudden passion slew deceased, he would only be guilty of manslaughter. Following Richardson v. State, 28 Texas Crim. Rep., 216.

**7.—Same—Charge of Court—Insulting Language to Female—Truth of Charge.**

Where upon trial for murder the defensive theory was insulting language to a female relative, and there was evidence by the State that the defendant was the father of the illegitimate child of the woman whom he claimed deceased had slandered, there was no error in the court's charge that if the defendant was the father of said child that the homicide would not be reduced to manslaughter, even though the deceased had made such statement.

**8.—Same—Charge of Court—Adequate Cause—Sudden Transport of Passion.**

Upon trial for murder, where the defense claimed manslaughter, it was error on part of the court that the passion aroused in defendant should be a sudden transport of passion, rendering defendant's mind incapable of cool reflection; simply passion is all the law demands.

Appeal from the District Court of Hill.    Tried below before the Hon. W. C. Ware.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Ivy, Hill & Greenwood,* for appellant.—Cited authorities stated in opinion; also Loyd v. State, 46 Texas Crim. Rep., 533; Tucker v. State, 55 S. W. Rep., 711; Martin v. State, 40 Texas Crim. Rep., 660; Williams v. State, 24 Texas Crim. App., 637; Eanes v. State, 10 Texas Crim. App., 421.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—This conviction was for murder in the first degree, the punishment assessed at life imprisonment.

The facts in this case, in substance, show that the deceased had stated to two or three different parties on Wednesday before the killing on Monday that old man Caruth's daughter, Kittie, was six months gone, and that appellant was the daddy of the child. Wallace, one of the parties to whom the deceased had told this, told the appellant about it on the Thursday following. The deceased was working in a field close by when he told him. Appellant saw him several times that day and he said nothing about it. Kittie Caruth was a first cousin of appellant, her mother and appellant's father being brother and sister. On Saturday, the appellant purchased a pistol in Hillsboro and on Sunday night he went to his uncle's house, had a talk with Kitty Caruth and wanted to know of her if what old man Robertson said was true. She denounced it as false. The appellant, in company with Bert Caruth and the witnesses Billbray and Wallace, went to see old man James about

the matter, the said James being the grandfather of Kittie, and the matter was there talked over as to what deceased should have said in regard to Kittie's pregnancy. The next Monday morning, appellant and Bert Caruth went to the field where Robertson was working and Bert Caruth asked deceased if it was true that he had been saying these things about Kittie. He said, "Yes, he had told it to a couple of gentlemen, and that he thought it ought to be told." Appellant spoke up, and told him it was a damn lie and commenced shooting; emptied his pistol; the deceased fell and then got up and started to a barn or some kind of an outhouse, some two hundred yards off. Appellant followed him, reloading his pistol. The wife and daughter of the deceased appeared upon the scene and begged appellant not to shoot any more. Deceased got in this outhouse and shut the door. Appellant went to the door, pushed it open and fired four or five shots, killing deceased. Deceased cried out several times, "Lord, have mercy! don't!" Kittie Caruth got upon the stand and testified, that three months after the death of deceased, she gave birth to a child and appellant was the father of said child. She admitted, however, that she had practically denied to the grand jury and to other parties that appellant was the father of the child.

Bill of exceptions No. 1 shows that appellant placed Miss Blanche Caruth, Kittie's sister, upon the stand and offered to prove by her and would have done so, that appellant had frequently been to their home as a visitor and guest; that ever since appellant had been in Hill County he had frequently been in their home; that she had observed his conduct when he was in the presence of and associated with Kittie Caruth, and had never seen him take or offer to take any liberty with her sister, Kittie Caruth; that appellant had frequently attended gatherings with witness and said Kittie Caruth. The bill shows further, that deceased had at different times and to different persons made statements imputing a want of chastity and virtue to Miss Kittie Caruth, which statements were communicated to appellant before the homicide. That appellant was her first cousin, and the evidence showed that deceased had charged that Kittie Caruth was pregnant, she being an unmarried female. Appellant claimed he killed deceased on account of said slander. The State placed said Kittie Caruth on the stand, and proved by her that about three months after the homicide she gave birth to a baby, and proved by her that appellant was the father of her child. She testified that appellant had intercourse with her but twice, once in her home in Hill County, and once in the home of appellant's father in Goliad County, and that when the intercourse occurred in her home, that her brother, Bert Caruth, was in the room when and where it occurred, and that her sister, Blanche Caruth, was in the next room. Kittie Caruth admitted that she had told everyone with whom she had talked about it, that appellant was innocent and that she had so testified under oath before the grand jury. She admitted that she was never engaged to appellant. She also stated that she had been receiving the atten-

tions of one Wes Holmes, before the killing, and had carried on a correspondence with him. This was all against her father's commands. That there was evidence to the effect that deceased, John Robertson, in his statement about Kittie Caruth had said Wes Holmes might be guilty of placing this girl in a family way, and that suspicion pointed to him, and that Holmes was a cousin of his wife, and his wife had sent Holmes word to leave the country; and the evidence further shows that Wes Holmes had left the country.

The above is a rehearsal of all the facts set up in the bills of exception. The evidence was admissible. It is a matter of vital importance to appellant as to whether or not he was the author of Kittie Caruth's shame. If he was, he could not claim, in law, any reduction of the homicide to manslaughter by virtue of slander of a female relative. Therefore, any circumstances that went to refute the idea that he was the author of her shame, would be admissible, however, meager said circumstance. If his conduct towards Kittie Caruth in the presence of her relatives or associates was decorous, decent and proper, while a small fact, nevertheless would be admissible on the controverting issue as to whether or not he was the author of her shame.

Bill of exceptions No. 3 complains of the refusal to allow appellant to prove by W. A. Wallace as to what appellant said on the night before the killing; that he (appellant) did not believe the statement of John Robertson, and that he believed that Robertson was lying on Kittie Caruth and that he believed that Kittie was innocent. This would be a self-serving declaration and not admissible.

Among other clauses of the court's charge, we find the following: "The burden is on the State at every point and on every issue to establish the guilt of the defendant by legal competent evidence beyond a reasonable doubt, and the burden of proof never shifts to the defendant; and in case you have a reasonable doubt of the guilt of the defendant you will give him the benefit of such doubt and find him not guilty of every grade of homicide above manslaughter." The charge was tantamount to telling the jury to find appellant at least guilty of manslaughter. Article 765, of the Code of Criminal Procedure, reads as follows: "The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence, and in case of reasonable doubt as to his guilt he is entitled to be acquitted." The doctrine of reasonable doubt, under our theory of government, applies to every one charged with crime; and if the jury have a reasonable doubt of any grade of homicide, appellant is entitlted to an acquittal. This the court, in this instance, has refused to give appellant. As aptly said by this court, through Judge Hurt, in an early decision, a doubt of a proposition upon which the guilt depends, is a doubt of guilt. The trial court in this instance appears to have looked at the evidence as only presenting the issue of manslaughter from appellant's standpoint; still this would not absolve the court from the duty of charging the statute, since, as stated, the doctrine of reasonable doubt applies to

the general issue of "guilty" or "not guilty." For collation of authorities on this question, see White's Code of Criminal Procedure, article 765. Furthermore, this court has held that the failure to charge upon reasonable doubt is fundamental error. Mace v. State, 6 Texas Crim. App., 470; Hutto v. State, 7 Texas Crim. App., 44; Alonzo v. State, 15 Texas Crim. App., 378.

Appellant complains of the court's charge in the third paragraph of his motion, in that, the court says, in order to constitute murder in the second degree, the killing must be in a sudden transport of passion. The statute of this State only requires that the killing be done in passion aroused without adequate cause. See Kannamaker v. State, 51 Texas Crim. Rep., 118, 101 S. W. Rep., 238.

The fourth ground of the motion complains of the sixteenth paragraph of the court's charge, wherein the following appears: "By the expression under immediate influence of sudden passion, is meant, first, that the passion is not the result of a former provocation other than insulting words towards or concerning a female relative. Second, the act must be directly caused by the passion arising out of the provocation." Appellant insists that said paragraph is erroneous, in that it presents other than insulting words concerning a female relative, whereas there was no evidence suggesting any other provocation than insulting words concerning a female relative of appellant. This criticism is correct. If the issue in a murder case should be manslaughter aroused by an adequate cause, certainly it would be erroneous to charge on insult to a female relative, said issue not being raised. Then the converse is equally true. Where the court presents the theory of manslaughter, as was done in this case, manslaughter not being suggested by the evidence, it is error to do so. In addition to the charge presenting the theory of manslaughter on account of insult to a female relative, the court should have also charged that if the defendant, not believing said insulting words, sought out the deceased and asked him if he uttered said slanderous statements, and being apprised that he did so, repeated same, and the defendant, then, under the immediate influence of sudden passion, aroused by this insulting language, slew deceased, he would only be guilty of manslaughter. This phase of manslaughter was not presented, as we understand, by the charge in this case. See Richardson v. State, 28 Texas Crim. App., 216; Martin v. State, 30 Texas Crim. App., 665; Williams v. State, 24 Texas Crim. App., 637.

The seventh ground of the motion complains that the court gave the following charge: "If you believe from the evidence beyond a reasonable doubt that before the homicide the defendant had had sexual intercourse with the witness, Kittie Caruth, and was the father of the child subsequently born to the said Kittie Caruth, then and in such an event the homicide would not be reduced to manslaughter, although the defendant had heard that the deceased had stated that the said Kittie Caruth was in a family way and six months gone, and that the defendant was the daddy of the child, or even though the deceased had re-

peated said statement or admitted that he had so stated in the presence of the defendant at the time of the killing." Appellant insists that this instruction is error and cannot be the law. We hold that said instruction is the law. It is unnecessary to cite authorities to support the proposition that the character of a female may be proved as a circumstance to throw light upon whether the appellant believed the language slanderous. Certainly, it could not be seriously contended that, if Kittie Caruth had given birth to a child, being an unmarried female, deceased had stated this fact to a party who informed appellant, her first cousin, and appellant knew the fact to be true, and he had sought out deceased and killed him, these facts alone would not reduce the killing below murder. We are not here discussing the question as to the lack of belief on the part of appellant of the truth of the statement, but to our mind it is absurd to say that one can claim that he killed a party for insult concerning a female relative, when said party knows the language used about said female is true. It is not slander or insult to a female relative in contemplation of the statute that authorizes the reduction of homicide to manslaughter where the appellant knows the statement upon which he acts to be true; and if appellant was the father of the child or the author of the shame of Kittie Caruth in this case, he certainly knew it, and knowing it he could not ask any court of justice in this State to give him a verdict of manslaughter upon said statement. We accordingly hold the charge of the court correct. Furthermore, testimony going to show a lack of chastity by general reputation of a female, by a long line of authorities in this State, has been held to be proper evidence; since it goes to bring home to appellant the knowledge that said statement or supposed slander is not slanderous, but a true statement of what perhaps may be a horrible fact or condition. The theory for killing deceased for insult to a female relative is that appellant, at least, believes deceased is lying. If he knows he is telling the truth, it is absurd, as stated above, to claim any such defense.

We notice, since writing the above, that the court charged upon the issue of manslaughter presented by the authority of Richardson et al., above cited; but we refer the learned court to said authorities in view of another trial.

In paragraph 21 of the court's charge we find the following: "If you believe from the evidence beyond a reasonable doubt that he, defendant, in the County of Hill and State of Texas, on or about the time charged in the indictment, in a sudden transport of passion aroused by adequate cause, as hereinbefore explained, with intent to kill, did with a pistol unlawfully shoot and thereby kill the said J. C. Robertson, as charged in the indictment, then and in that case you will find the defendant guilty of manslaughter." This charge is erroneous. If appellant believed the statements of deceased to have been slanderous to his cousin, and thereby was aroused to passion which rendered his mind incapable of cool reflection, and he sought out deceased and killed him on the first meeting, laboring under said passion, he would be guilty of man-

slaughter, and the law in this State in deference to the love of home and respect for female virtue, does not require that the passion should be a sudden transport of passion, but simply a passion that renders the mind incapable of cool reflection. It follows, therefore, that this charge is wrong in the matter pointed out.

We believe we have passed on all the questions necessary to be reviewed in this record. The motion for a new trial is nearly as long as the record, but we think that we have passed on all the questions that require review at our hands.

For the errors discussed the judgment is reversed and the cause is remanded.

*Reversed and remanded.*