NEWTON STOVALL v. THE STATE.

No. 7517.   Decided April 18, 1923.

Rehearing granted June 27, 1923.

### 1.—Murder—Copy of Indictment—Omission of Seal.

That the omission of the seal on the writ issued by the clerk of the trial court commanding service by the sheriff of a copy of the indictment, is not a material error, was recently decided. Following Luster v. State, 63 Texas Crim. Rep., 541. Overruling Ollora v. State, 60 Texas Crim. Rep., 217.

### 2.—Same—Charge of Court—Murder—Manslaughter.

It is not enough that there exist facts which could be adequate to produce that passion which reduces the killing to manslaughter, but it must appear to the satisfaction of the jury that such condition of passion was actually in mind of the accused at the time and caused him to commit the homicide, and there was no error in the submission of the law of murder in the instant case.

### 3.—Same—Evidence—Reputation—Virtue and Chastity.

Where testimony of the State showed that the reputation of defendant's wife for virtue and chastity to be very bad, there was no error in permitting testimony upon cross-examination of defendant's witness that such reputation arose from the conduct of defendant and his wife before they married, and there was no error in submitting the law of murder.

### 4.—Same—Adultery—Charge of Court.

Where, upon trial of murder, exception was reserved to the charge of the court for failing to instruct the jury as under subdivision 3, Article 1132 P. C., that adultery of deceased with defendant's wife would be adequate cause, provided the killing took place as soon as the fact of the illicit connection be discovered, but the evidence did not raise this issue, and there is no reversible error.

### 5.—Same—Bill of Exceptions—Multifariousness.

Where the bills of exception are so clearly multifarious and present so many different objections, this court cannot consider same on appeal.

### 6.—Same—Reputation—Chastity—Practice in Trial Court.

Where it is developed on cross-examination that the conclusion of the witness of the bad reputation referred to at the time, when knowledge of such reputation might not be chargeable to defendant, the court's prompt action in excluding the testimony was seemingly all that could be done.

7.—Same—Bill of Exceptions—Qualification.

Where it is made to appear from the qualification by the court of the bill of exceptions that all the testimony complained of was brought out by counsel for defendant upon cross-examination, there is no reversible error.

8.—Same—Rehearing—Evidence—General Reputation—Chastity.

If defendant was a resident of the community in which his wife resided before their marriage, and the general reputation of the woman for virtue and chastity was shown to be then bad, he could not escape knowledge of such reputation; besides the qualification of the trial judge to the bill of exceptions that the testimony was brought out on cross-examination must be accepted.

9.—Same—Evidence—Charge of Court—Manslaughter—Conjunctive.

The exception of defendant to the charge of the court is well taken that it was erroneous to require that the jury believe that the assault, the carnal knowledge, and the use of insulting words or other conduct, all had been communicated before they could find adequate cause for sudden passion.

10.—Same—Charge of Court—Insulting Words—Adequate Cause.

Insulting words or conduct to a female relative is a statutory adequate cause, and if relied on the question is not whether the same would produce such passion in a person of ordinary temper, etc., but whether such words and conduct occurred and whether same did in fact produce such passion. and the court's charge upon this state of the case leaving this fact to the jury was reversible error.

11.—Same—Evidence—Practice on Appeal.

Inasmuch as the case must be reversed for errors in the charge of the court, attention is called nevertheless to the admission of the testimony of the witness Lon Fry, which should not have been admitted.

12.—Same—Adequate Cause—Insulting Conduct to Female Relative.

Where defendant had been married but a short time when he killed deceased as he claimed through passion caused by insulting conduct towards his wife on the part of the deceased, proof of the general character of the female relative for virtue and chastity and of specific acts of misconduct with defendant, under the facts of this case prior to her marriage to him and while she was the wife of another man, would be admissible.

13.—Same—Evidence—Immaterial Facts.

Testimony that defendant was in the city of Dallas at the time his wife got a divorce from her former husband, and that three days later she and defendant were married, should not have been admitted.

Appeal from the District Court of Kaufman. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

Cooley & Crisp, and Bunpass & Wade and Miller & Miler, for appellant.—On question of Court's charge on manslaughter, Barbee v. State, 58 Texas Crim. Rep., 129; Pitts v. State, 29 Texas Crim.

App. 374; Ballard v. State, 71 Texas Crim. Rep., 587, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, *H. R. Young,* and *Thomas R. Bond,* for the State.—On question of charge on manslaughter, Squyres v. State, 242 S. W. Rep., 1027; Hicks v. State, 171 id., 755; Gillespie v. State, 109 id., 158.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Kaufman County of murder, and his punishment fixed at ninety-nine years in the penitentiary.

That the omission of the seal on the writ issued by the clerk of the trial court commanding service by the sheriff of a copy of the indictment, is not a material error, was recently decided in substance by this court in Adams v. State, No. 7349, opinion handed down March 14, 1923, in which case the Ollora case, 60 Texas Crim. Rep., 217, was reviewed and to some extent overruled and the Luster case, 63 Texas Crim. Rep. 541, was approved.

The killing took place at that part of the depot in the town of Terrell, Texas, used as an office by the express company. Deceased was in said office and walked out and to the waiting room to get some water. Appellant was approaching the depot armed with a shotgun and saw deceased as the latter came back from the waiting room into the express office. He had some buck shot shells in his pocket and upon seeing deceased put two of said shells into his gun. According to his own testimony appellant next saw deceased moving along inside the room and testified that deceased turned his head and caught sight of him, appellant, and made a movement with his left shoulder, that side being toward appellant, and appellant thought that he was going to draw something with his right hand and immediately fired. Deceased fell and appellant walked nearer and fired again. Sixteen buck shot entered the body of deceased at one place and nine at another. Parties inside the express office testified that the first shot entered the back of deceased, who fell, and that after he fell, appellant came up near to the open door through which he had first fired, and fired the second shot into the body of deceased while lying on the floor. Appellant further testified that he shot deceased because he thought his own life was in danger, and that deceased had insulted and outraged his wife. Appellant's wife testified that she and appellant came to Terrell in February 1922, and that some time after their arrival as she was walking along the street she was accosted by deceased and recognized him as a boy who had formery played with her own sons; she got in the car with him and he carried her to the store to which she was going. She also testified that on another occasion she rode in the

car with him fifteen or twenty minutes. She further testified that he put his hand upon her leg on one occasion while in the car with her, and that he proposed to come to her house to see her on occasions when her husband was away, and stated that twice he came to her house but that the door was fastened and he was not permitted to enter on either occasion. She testified to no acts of criminal intimacy, and denied having told her husband of any such acts. Appellant swore that his wife told him of insults to her by deceased, and further said that she told him that deceased came into her house on one occasion and by brute force had sexual intercourse with her. He also testified that on June 15, 1922, she told him that deceased had been out to her house that day but did not get in. The 15th of June was on Thursday; the killing took place the Monday following. It was in testimony both by appellant and his wife that on Saturday preceding the killing, appellant suggested to her that they walk on Asylum Avenue in the city of Terrell. Deceased was an employe at the North Texas Hospital for the Insane in said city and drove a car having the initials of the institution upon it. He frequently drove on Asylum Avenue. Appellant said that his object in taking the walk above mentioned was to see what deceased would do. He walked on one side of the street and his wife on the other. While thus engaged deceased came meeting them in said car, and, according to their story, when he saw appellant's wife he went on up, turned the car and came back and then stopped it and began talking to the woman. Appellant admitted that deceased on this occasion was within fifty feet of him. Appellant was armed with a pistol, a 38-45. His wife testified that she told deceased on this occasion that he was being watched and that he was liable to be killed and begged him to go on off, which he did. Reverting for a moment to what occurred at the express office on the day of the killing, we note that a State witness testified that after deceased fell to the floor and appellant advanced to the open door and shot him the second time, that appellant then unbreeched his gun, blew the smoke out of the barrels, reloaded both barrels and walked off and that nothing was said at the time.

Appellant excepted to the submission of the law of murder on the ground that there being no other testimony as to motive save that which showed that he had killed deceased because of insulting words and conduct toward his wife, the case was one only of manslaughter. We do not understand the law as contended for by appellant's counsel. The Doss case, 67 S. W. Rep. 321, which is cited by appellant, is on facts stronger for the accused than those here present. It is not enough that there exists facts which could be adequate cause to produce that passion which reduces a killing to manslaughter, but it must appear to the satisfaction of the jury that such condition of passion was actuating the mind of the accused at the time,

and caused him to commit the homicide. This is statutory, Art. 1137, P. C., as well as judicially determined. Wofforth v. State, 31 Texas Crim. Rep. 387; Evans v. State, 31 Texas Crim. Rep. 18; Bowlin v. St. No. 6418, opinion 11/1/22. The existence of such passion as well as of the adequate cause, are questions of fact for the jury.

Testimony of the State showed the reputation of Mrs. Stovall for virtue and chastity to be very bad. A witness to this fact, upon cross-examination as to whether said reputation arose from bad conduct between said wife and deceased, testified that it did not,— that it arose from the conduct of appellant and his wife before they married. In Rodman's case, 52 Texas Crim. Rep. 591, and Teague v. State, 67 Texas Crim. Rep., 41, both approved in Bibb v. State, 86 Texas Crim. Rep., 112, 215 S. W. Rep., 316, it was held that such reputation is entitled to weight in determining the existence of passion; i. e., that one who knows of his female relative's prior infidelity may or may not be so aroused by the insult relied on in the instant case as to reduce the killing to manslaughter. The State also predicated its claim that the killing could not be attributed to such passion, and, therefore, could not be reduced to manslaughter, —on the fact that after being informed of the insults to his wife appellant met deceased on Saturday before the killing on Monday, and not having then slain deceased immediately or so soon after being informed of the insults as the party killing may meet the party slain, —the homicide would not be manslaughter. Granting basis for either contention of the State, the court was justified in submitting the law of murder, and the decision of the grade of homicide was for the jury under appropriate instructions and upon their conclusion as to the facts.

Exception was reserved to the charge for failing to instruct the jury as under subdivision 3, Article 1132 P. C., that adultery of deceased with appellant's wife would be adequate cause provided the killing took place as soon as the fact of the illicit connection be discovered. We do not think the exception well founded. As stated above, Mrs. Stovall did not testify to any illicit intercourse with deceased, and appellant's testimony was that she told him that deceased by brute force had knowledge of her person. This is not adultery but rape, if anything, and the learned trial court told the jury plainly that if they believed that deceased had assaulted appellant's wife and made insulting remarks to her, and this information was given appellant and it produced in his mind such a degree of rage, anger, terror or resentment as to render it incapable of cool reflection, this in law would be an adequate cause. We do not think the criticism of that part of the charge sound for that it used the conjunction "and" instead of "or." Appellant discovered

95 T. C.—13

no adultery, heard of no insulting conduct, except as same was disclosed by his wife. Julia Davis only swore that she told appellant that his wife was afraid of deceased, and we find nothing in the testimony of witnesses Seale and Dewberry sustaining the proposition of an assault. If then appellant's wife swore that she told him of insulting conduct and words, and he adds to that that she also told him of deceased's assault upon her, we fail to see how injury could result from the submission of both as adequate causes conjunctively. Especially is this true in view of the fact that in paragraph thirteen of the charge the court below told the jury that insulting words or conduct would be adequate cause; and in paragraph fifteen informed them that if appellant was told of such insulting words or conduct and believed this to be true, it would be adequate cause whether in fact same was true or not.

Appellant's bills of exception Nos. 4, 5 and 6 are so clearly multifarious and present so many different objections, as that this court can not consider same.

Complaint is made of the action of the court in admitting testimony of two witness to the bad reputation of the wife of appellant for virtue and chastity, which testimony was excluded by the court upon ·it being developed that said reputation as far as said witnesses knew was based upon her acts and conduct prior to her marriage to appellant. We do not think the bill of exceptions shows any error. On direct examination the witnesses testified, and it being developed on cross-examination that their conclusion of her bad reputation referred to a time when knowledge of such reputation might not be chargeable to appellant, the court's prompt action in excluding the testimony was seemingly all that could be done.

Bill of exceptions No. 8 complains of the testimony of a witness on certain facts, but as qualified the bill presents no error. It is made to appear from the qualification of the court· that all the testimony complained of was brought out by counsel for appellant upon cross-examination. The same thing is true of the complaint evidenced by bill of exceptions No. 9.

We feel constrained to compliment counsel appointed by the court below for their diligence and faithfulness in their prosecution of the defense. There are many things in the record which might be mentioned in this opinion greatly reflective upon the course of conduct of appellant prior to his marriage to his wife. A discussion of such facts is not necessary. The killing appears to have been done by one who was perfectly cool, calm and collected. The jury apparently paid no attention to his claim of self-defense, or of passion. The testimony was calculated to lead them in that direction. If appellant had been instrumental in breaking up the· home of another man, this might have been considered by the jury as a sufficient reason for his failure to manifest any resentment or passion

upon the various prior occasions when he claims his wife told him of insulting conduct amounting to actual violation of her person by deceased. The jury may have concluded that inasmuch as appellant's claim that his wife told him on an occasion some time before the killing, that deceased came to their home and violated her, and that this did not produce in his mind that passion conceded by our statute to the frailty of human nature, and did not cause him to then seek deceased and kill him or wreak vengeance upon him, that there was no reason for concluding that this homicide was produced by such passion at all, and in such case they were justified in finding him guilty of murder.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 27, 1923.

LATTIMORE, JUDGE.—It is insisted that Mrs. Knoerr's testimony as to the bad reputation of appellant's wife for virtue and chastity was inadmissible, and that we erred in sustaining the court's action in letting same in before the jury; and also in accepting the qualification of the learned trial judge to his bill of exceptions presenting this complaint. Said qualification states that the testimony complained of was brought out by appellant on cross-examination. Review of said bill discloses that while all the testimony set out therein was brought out on cross-examination, it is set out for the purpose of supporting appellant's contention that the testimony of the witness was based entirely on what had been told her of the conduct of the wife of appellant prior to her marriage with him. We get little light from the bill which sets out a part only of the cross-examination of the witness. We deem it permissible to pass on the contention in the light of the entire testimony of said witness as presented in the statement of facts. On direct examination she said that she knew the general reputation of appellant's wife in the community in which she lived, for virtue and chastity, and that it was very bad. On cross-examination she testified that she heard it discussed when the Stovalls (appellant and his wife) moved into the house next door to that of witness; that she did not know whether her information came from people who knew Mrs. Stovall prior to her marriage to appellant or not; that her informants were basing what they told her about such reputation on facts before her marriage and since her marriage also; that she did not hear any one's name connected with that of Mrs. Stovall but just her general reputation over town. Further, the witness said she first heard of it through friends at Edgewood, this conduct relating to appellant and his wife before their marriage; that they went fishing and stayed

two or three days before they were married; that this was what she based her reply as to her reputation on. We would not be inclined to take the restricted view of the last clause, which is advanced by appellant, but think the witness intended to say that all of her testimony previously given was that upon which she based her testimony that the reputation of Mrs. Stovall was bad. In such case it could not be soundly insisted that the testimony of bad reputation was based solely on what had occurred prior to her marriage. Nor are we convinced of the correctness of the proposition that where the appellant lived in the same town with his then wife prior to his marriage to her, and it is further shown that the marriage was only nine months prior to the homicide, that it would be incompetent to prove such bad reputation prior to the marriage. If appellant was a resident of the community in which his wife resided before their marriage, and the general reputation of the woman for virtue and chastity was shown to be then bad, we do not see how he could escape knowledge of such reputation.

The witness Mrs. Henderson testified for the State that the reputation of Mrs. Stovall for truth and veracity was bad. This appears from the statement of facts. Appellant's bill of exceptions No. 9 shows that said witness testified that the reputation of Mrs. Stovall for virtue and chastity was bad, and his complaint is directed at the admission of this testimony, and the further fact that such reputation was acquired before her marriage to appellant. A certificate of the trial judge to this bill states that all the testimony so objected to was brought out by appellant on cross-examination. There being nothing in the record to call this statement of the court in question, it must be accepted by us as true and the bill considered with this qualification appended.

Upon more mature consideration of the charge of the court applying the law of manslaughter to the facts of the case we fear that the learned trial judge erred and that we should not have upheld his charge as correct. Said charge is as follows:

"Now if you believe from the evidence that the defendant was informed that the deceased, H. A. Dossett, had entered his home, made an assault upon his wife and caused her to submit to his passion, and had made insulting remarks to her, and you further believe from the evidence that such would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper, sufficient to render the mind of the defendant incapable of cool reflection, also that such state of mind did actually exist, at the time of the commission of the offense, then you are charged that such acts and conduct and remarks would be deemed in law adequate cause."

Appellant's exception was that this required the jury to find that appellant was informed that deceased had entered his home, assaulted his wife and forced her to submit to his passion before they could

believe that adequate cause had been shown. This proposition rests upon the fact that the statutes of this State permit that proof of insulting words may form the basis for adequate cause. Attention is called to the fact that while Mrs. Stovall testified for her husband to insulting words and conduct of deceased which she communicated to appellant, she further denied any act of intercourse on his part and denied telling appellant of such act of intercourse. Miss Davis also testified that Mrs. Stovall in talking to her about her trouble with deceased never claimed that deceased had had carnal knowledge of her but did tell her of his improper advances and that he had taken her in his arms and told her he had learned to love her when he used to visit her home with her boy. Appellant was the only witness who testified that his wife told him that deceased had assaulted her and obtained carnal knowledge of her. The exception of appellant seems well taken that it was erroneous to require that the jury believe that the assault, the carnal knowledge, *and* the use of insulting words or other conduct, all had been communicated before they could find adequate cause for sudden passion. In other words,—had the charge not coupled those things claimed as adequate cause conjunctively,—the jury might have been willing to believe the existence of adequate cause arising from insulting words and thus be led to conclude that the killing was but manslaughter, even though they did not accept the truth of appellant's story that his wife told him of an assault and rape by deceased. The case of Barbee v. State, 58 Texas Crim. Rep. 129, is to some extent in point, while it presents two conflicting paragraphs of the charge, one presenting insulting conduct as adequate cause and the other adequate cause based on a different proposition.

We also call attention, in view of reversal, to that part of said charge which told the jury that "If you believe that such would commonly produce a degree of rage, anger, resentment or terror in a person of ordinary temper, sufficient to render the mind of the defendant incapable of cool reflection," etc. This was wrong. Insulting words or conduct is a statutory adequate cause, and if relied on, the question is not whether same would produce such passion in a person or ordinary temper, etc., but whether such words and conduct occurred, and whether same did in fact produce such passion.

Inasmuch as the case must be reversed for the error in the charge, in view of another trial we note the matters complained of in appellant's bills of exception Nos. 4, 5 and 6. While bill of exceptions No. 6 purports to present objections to the testimony of Lon Fry, we find no such testimony in the statement of facts after diligent search. If same, as it appears in the bill of exceptions, was in evidence, it was hurtful and if offered should not be admitted upon another trial.

Appellant had been married but from September 1921 to June following when he killed deceased, as he claimed through passion caused by insulting conduct toward his wife on the part of deceased. In such case Article 1134 of our Penal Code makes competent, proof of the general character of the female relative for virtue and chastity, and in our opinion proof of specific acts of misconduct with appellant, under the facts in this case, prior to her marriage to him and while she was the wife of another man, would be admissible. The purpose of proof of general bad reputation for chastity in such case is to bring home to the accused knowledge of his female relative's unchastity, it being logical to conclude that what is known to everybody, must be known to him. Certainly when he is shown to be particeps criminis with her in acts of lewdness, occurring recently before his marriage to her and while she is the wife of another, perforce brings home to him knowledge that she is not a virtuous woman. The Ballard case, 71 Texas Crim. Rep. 587, and the Bereal case, 88 Tex. Crim. Rep., 138, 225 S. W. Rep., 252, involve different principles. In each of those cases the accused had lived with his wife for many years prior to the homicide and for that reason apparently, acts of infidelity prior to marriage were held inadmissible. In the instant case the State undertook to prove the reputation of appellant's wife within apparently two years of the homicide, and to supplement same by proof of specific acts of misconduct with apellant while she was the wife of a Mr. Fry. Under the authority of Bozeman v. State, 85 Texas Crim. Rep. 653, this would seem permissible.

Testimony that appellant was in Dallas at the time his wife got a divorce from her former husband, and that three days later she and appellant were married, would seem to shed no light on any issue in this case and should not have been admitted.

For the error above mentioned, the motion for rehearing is granted, the affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*