## WAYNE DAVIS v. THE STATE.

No. 16035. Delivered November 15, 1933.
Rehearing Denied January 10, 1934.
Reported in 66 S. W. (2d) 339.

132

The opinion states the case.

*Lamar Bethea,* of Bryan, and *Heidsingsfelder & Heidsingsfelder,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of murder with malice aforethought and his punishment assessed at confinement in the state penitentiary for a term of 14 years.

The facts are in substance as follows: On May 4, 1931, Willie Lovell, the deceased married Roma Davis, the daughter of appellant, who was then something over 16 years of age. They married without her parent's consent. In a day or two after their marriage, the wife of appellant went to where the young couple were and brought them home. They remained at appellant's home for some time and then moved over to the Broadway place, some three-quarters of a mile from the appellant's home, where they were living at the time of the alleged homicide. On the morning of January 7, 1932, deceased was working for the appellant. He hitched a horse to a slide to haul off some trash. The horse would not pull and he then saddled another horse and put a rope around the neck of the other horse and tied it on to the saddle and in. that way tried to drag it and make it pull. Miss Ruby Earl, a daughter of the appellant,

remonstrated with the said Willie Lovell and asked him not to abuse the horse, but he insisted he would make it work or kill it, whereupon she undertook to take the traces loose and when she did he pushed her away. She then struck him and he then struck her. The appellant was not at home at the time but had gone to Bryan. When he returned home about 4 P. M. he noticed one of his fox dogs had a sore foot. He called his daughter Ruby Earl to help him treat the dog's foot. While they were engaged in this work he noticed that Ruby Earl's nose was skinned and her cheek bruised. He asked her how come her face and cheek were skinned, and she then told him what had happened. The appellant then got his shotgun, mounted his horse, and rode over to Willie Lovell's home for the purpose of making him come to apologize to Ruby Earl and kiss her foot. Upon arriving at the home of deceased he went into the house and made Willie come back to the appellant's home. Willie was in the lead with the appellant close behind him and pushing him in the back with the gun every once in a while. Willie's wife Roma mounted appellant's horse and followed them to the home of the appellant and while there in appellant's yard, according to the appellant's version, Willie made a certain turn which induced the appellant to believe that he was going to draw a gun when appellant shot and killed him. The appellant testified, among other things, as follows: "I don't guess he could have done anything to make me more madder or got into me worse than that. I knew even if he apologized that he would never put his foot on my place any more. I had made up my mind that I was done with him. I had my mind made up he would leave there after he had apologized. I was through with him. You may know I was mad."

The appellant's first contention is that the evidence is insufficient to justify a conviction of murder with malice. From the light of the record before us we have concluded that the evidence is such as justifies the jury's conclusion that the appellant was guilty of murder with malice. Purvis v. State, 284 S. W., 588; Stovall v. State, 253 S. W., 526.

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the district attorney to ask the witness Earnest Lovell the following question: "I will ask you whether or not a pistol was about the body at any time that you saw and whether or not anybody picked the pistol up there?" to which appellant objected because it was leading and suggestive, which objections were overruled and the witness answered, "Not that I saw; I did not see it." We do not believe that the question was subject to the exception.

By bill of exception No. 2 the appellant complains of the action of the court in refusing to permit him to elicit on cross-examination of the sheriff what the appellant's wife told him that the deceased's wife had told her soon after the killing. The appellant sought to elicit from the sheriff that at the time the appellant's wife gave him the gun that she told him, the sheriff, that her daughter, the wife of deceased, told her she had taken a pistol off of deceased and put the pistol in the closet. It appears to us that whatever the wife of deceased said to the wife of appellant would be mere hearsay. However, the appellant introduced the wife of deceased and proved by her that she took the pistol and two knives off of the body of deceased and placed them in the closet. Hence, the appellant managed to get the same testimony before the jury that he would have had the court not sustained the state's objection to the question propounded by the appellant to the sheriff on cross-examination.

What we have said with reference to bill of exception No. 1 necessarily disposes of bill of exception No. 3 as they relate to the same matters.

By bill of exception No. 4 the appellant complains of the action of the court in declining to permit him to ask the witness Earnest Lovell on cross-examination, "Why he didn't go out there when they were having that row in the lot about the dragging of the horse and the slide." The bill shows that the court stated to appellant's counsel that he could ask the witness as to what he did and where he was, but his motive for doing this or that would not be material to the inquiry, to which the defendant then and there excepted. We do not believe that the court committed any error in this respect.

By bill of exception No. 5 appellant complains of the refusal of the court to permit the witness Earnest Lovell to answer the following question (propounded by appellant on cross-examination): "Do you go and get a pitcher of water and a rag every time you hear a shot fired around a place?" The state objected on the ground that the answer would be irrelevant and immaterial. In sustaining the objection, the court advised counsel for appellant that he had a right to ask why the witness got the rag and pitcher of water. Appellant then excepted to the remark of the court on the ground that it was a comment upon the weight of the evidence. It does not appear from the bill of exception that the objection and the court's statement complained of were made in the presence and hearing of the jury, nor do we believe it was a comment by the court upon the

weight of the evidence. Hence, the same do not disclose any reversible error.

By bill of exception No. 6 the appellant complains of the action of the court in permitting the district attorney, while cross-examining the appellant's wife, to ask the following question: "Was not he (meaning the deceased) picked up with the intention of bringing the body in the house?" to which the appellant objected on the ground that it was causing the appellant's wife to give evidence against the defendant on the issue of malice. The objection was overruled and the witness answered: "I did say for them not to bring it in the house but I did not know who had started in. I said I would rather send it to the undertaker." We do not believe that the court committed any error in this respect in view of the fact the witness said she wanted the body taken to the undertaker's parlor and the fact that proof had been offered that the body had not been moved or theretofore picked up.

By bill of exception No. 7 the appellant complains of the action of the court in permitting the state to impeach the wife of deceased, who was a witness for the appellant, by the justice of the peace Mr. McGee. The state had theretofore asked Roma Lovell if she did not, on the night of the homicide while she was bending over the body of her deceased husband, make the following statement to Mr. McGee, the Justice of the Peace, to-wit: "Willie and I were in our home the evening of the homicide. I saw my father coming up with his gun and I picked up an old pistol and when my father came in I told him not to kill Willie and he said that if I did not drop that he would kill me," to which she replied: "I don't know that I told the justice of the peace that same night that my father made Willie hold up his hands in the house and poked him repeatedly with a gun and marched him out of the house with his hands up. I did not say that because Willie did not have his hands up. This was just shortly after the killing and I was very much torn up in my mind and I don't know really what I might have said," whereupon the state introduced the justice of the peace and propounded to him the following question: "I will ask you whether or not Mrs. Roma Lovell said to you on the night of the homicide 'me and Willie were in our home the evening of the homicide and I saw my father coming up with his gun and I picked up an old pistol and when my father came in I told him not to kill Willie and he said if I didn't drop that he would kill me. My father made Willie hold up his hands in the house and poked him repeatedly with the gun and marched him out of the house with his hands up?'" To which the witness an-

swered: "She was stooping down and taking on over her husband and I said 'what did this happen about, tell me,' and she said that Willie and herself were at home and they had just eaten and said she looked up and saw daddy coming with a gun and said she grabbed up an old pistol and she said, "don't kill Willie," and her father said, "if you don't drop that I will kill you both.' She made that statement to me on the night of the homicide over at the Davis. home. She also made a statement the same night over at the home that her father made Willie hold up his hands in the house and he poked him with the gun repeatedly and marched him out of the house with his hands in the air." From the record before us and the bills of exception it appears to us that the proper predicate had been laid for the introduction of this testimony, and in support of our position we cite the following cases, to-wit: Ramon Campos v. State, 50 Texas Crim. Rep., 289, 97 S. W., 100; Fuller v. State, 30 Texas App., 560; Hartsfield v. State, 29 S. W., 777.

By bill of exception No. 8 appellant complains of the action of the court in permitting the state to prove by Mrs. Frank South that she was the mother of the deceased; that the deceased and his wife visited at her home for a week and that they got along the finest kind; that they never had a cross word in her home, to which the appellant objected because it was irrelevant and immaterial. We believe that this objection was correct but in view of the fact that the same kind of testimony was introduced and admitted without objection, we fail to see that the action of the court in admitting the same in any way injured the rights of the appellant.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Renewed complaint is made of the rejection of testimony as to what was said to the sheriff by appellant's wife at the time she gave him a pistol after his arrival at the scene of the homicide. The bill of exceptions presenting the complaint plainly shows that the defense sought to elicit hearsay testimony, both in regard to what Mrs. Davis said on her own account, and what she said to the sheriff as told her by her daughter. Nothing in Felder v. State, 23 Texas App., 477,— cited by appellant,—supports the admission of such testimony,

but appears to hold the contrary. The defense brought out the fact that Mrs. Davis gave the pistol to sheriff Reed; also that they wanted to prove what she then said to him. The record shows that all she knew about the matters thus sought to be brought out, had been told her by her daughter, the wife of deceased.

Earnest Lovell swore that he heard the shooting, saw appellant going across a field, saw the wife of deceased going to where deceased lay, was going there himself when she reached the body, saw no weapon of any kind about deceased, nobody picked up a weapon about said body that he saw. We see no ground for objection to the question by the state to this witness: "State whether or not anybody picked up a weapon about the body."

Earnest Lovell was not a party to the shooting, and his motive or reason in not going to where "They" (parties thus not shown in the bill) were having a row," was properly held not a material matter of inquiry. This statement applies also to the inquiry made by the defense, of said witness,—complaint of which appears in bill of exceptions No. 5.

With reference to the attack on our disposition of his complaint in bill of exceptions No. 6, we observe that appellant's wife was a rather strong witness in his behalf. We think it would be proper for the state to ask her on cross-examination questions which would tend to shed light on her attitude and feeling toward deceased. We see nothing in the question complained of in said bill which could call for an answer reflecting malice on the part of appellant himself.

We have again reviewed the predicate question and the impeaching answer of Mrs. Roma Lovell, complained of in bill of exceptions No. 7, and are not able to find any failure of the predicate in naming time, place or persons,—or in the answer,— as not responding substantially to the predicate.

Appellant having testified, without objection, that after his daughter married deceased they appeared to be affectionate and happy and to love each other, the complaint in bill of exceptions No. 8 of testimony of the mother of deceased that he and his wife stayed with her awhile after their marriage and got along well, we think to be without merit, and to have been properly disposed of in our former opinion.

Not being able to agree with appellant in any of the matters raised, the motion for rehearing is overruled.

*Overruled.*