## S. C. Counts v. The State.

### No. 3359.  Decided February 14, 1906.

**1.—Adultery—Continuance.**

Where upon trial for adultery the application for a continuance set up allegations which were entirely too general and failed to show an opportunity for knowledge on the part of the absent witness, there was no error in overruling the same.

**2.—Same—Affidavits Attached After Motion Was Heard.**

Where upon appeal from conviction for adultery, the bill of exceptions upon the motion for continuance showed that the attached affidavits to same were made after said motion was acted upon, they will not be considered.

**3.—Same—Two Days After Information Filed—Waiver—Diligence.**

Where upon trial for adultery, after motion for continuance was overruled and defendant had announced ready for trial, and the jury had been empanelled, defendant's counsel called the court's attention to the fact that two days had not expired since the filing of the information in which to prepare for trial; and it was nowhere made manifest that defendant's rights were injured, or, that there was any pleading he desired to file, or any step he desired to take in order to get ready for trial of which he was deprived on account of his not having said two days.  Held, that defendant waived his right.

**4.—Same—Harmless Error—Evidence—Bill of Exceptions.**

Upon trial for adultery, it was error to admit evidence that defendant asked witness to go on his bond in another county, and that witness did not know what the bond was for, etc.; but in as much that the bill of exceptions does not show that this testimony was of a character to have injured defendant, the error was harmless.

**5.—Same—Argument of Counsel—Defendant's Failure to Testify.**

Where upon trial or adultery, the State offered in evidence a certified copy of the original marriage license, to which defendant objected because it was not the original, and in answer to this objection the county attorney remarked that the original was in the possession of defendant and the State could not produce it, the reference was not one to defendant's failure to testify.

**6.—Same—Evidence—Identity of Prosecutrix—Bill of Exceptions.**

Upon a trial for adultery, where the State was permitted to introduce testimony that the witness lived near the house of defendant's paramour, and that on one occasion he saw him drive up to said house with a woman in the buggy with him, and saw them kissing one another, but did not know whether it was defendant's paramour, but thought so; and the bill of exceptions did not show that other persons lived at said house besides said paramour; and there was evidence that defendant was in the habit of driving out to said house, and the bill did not negative this fact, there was no error in admitting the testimony.

**7.—Same—Acts and Declarations of Third Party—Harmless Error.**

Upon trial for adultery, there was no error to show where defendant's paramour lived and that the State's witness saw defendant go there, etc., and the statement of witness that he had gone to see the officers about his affair, may not have been admissible but could not injure defendant.

**8.—Same—Charge Refused—Carnal Intercourse.**

Upon a trial for adultery, a requested charge limiting the jury to a particular occasion as to whether the parties had carnal intercourse, was correctly refused, and the court properly charged that if the parties had such intercourse within the time covered by the indictment they should convict.

**9.—Same—Case Stated—Sufficiency of Evidence—Circumstantial Evidence.**

Where upon trial for adultery the defendant was shown to have frequented the house of his paramour, staying there at nights, furnishing and buying her supplies, groceries, etc., that she lived alone in said house, and that during that time

defendant made his home there, taking his meals there, etc., and was constantly in her company, riding and walking together, etc., and upon one occasion seen lying together on the bed. Held, that these facts proved circumstantially that the parties were living together and had carnal intercourse.

Appeal from the County Court of Erath. Tried below before Hon. M. J. Thompson.

Appeal from a conviction of adultery; penalty, a fine of $250.

The opinion states the case.

*Nugent & Carter,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of adultery, and his punishment fixed at a fine of $250; hence this appeal. Appellant made a motion for continuance, which was overruled. It seems that two of the alleged absent witnesses, John Morgan and W. P. Hammers, were present in court and were not introduced by appellant. So the application as to them passes out. Will Morgan was not present. No diligence was shown for any of the witnesses. The excuse for the lack of diligence set up was, that there was an agreement between appellant and the assistant county attorney to dismiss the case. The record in connection therewith, in our opinion, disposes of this agreement. The testimony from Will Morgan was merely to the effect that during most of the time alleged in the indictment as constituting the period of adultery, appellant had lived in DeLeon. That part of the time he had lived in Dublin, with his wife and family, but during none of said time had he lived with Maggie Day. That they had not occupied the same house together; that they did not live together in Dublin. We take it, that the allegations here are entirely too general and fail to show an opportunity for knowledge on the part of the absent witness Morgan. We do not believe the court erred in overruling the application for continuance; nor was there any error in the action of the court with reference to giving appellant time to reduce his application to writing. As explained by the court this opportunity was afforded appellant, and he declined to avail himself of it.

In connection with the bill of exceptions on the motion for continuance, there are some affidavits attached, which were made after said motion was acted upon. They are not in such shape as to be considered a part of the motion or in connection therewith.

During the progress of the trial, and after the State and defendant had announced ready, and the jury had been selected, defendant's counsel asked to see the information, and called the court's attention to the fact that defendant objected to any further proceeding in the case, because the information showed to have been filed on the 27th of March, 1905, and that he had not been allowed two full days (the time allowed by the statute) to prepare his defense and file written

pleadings in this case; and appellant then desired the court to continue said case until he could have time to prepare his defense. The court explains this by stating that the information was shown to have been filed early on March 27, and the case was called in the afternoon of March 29. According to this statement appellant did not have two full days in which to prepare for trial after the information was filed. See White's Ann. C. C. P., art. 567, and authorities cited thereunder, This he was entitled to, unless he waived the same, either expressly or by implication. It appears that he made no objection when the case was called; nor did he ask for time in which to prepare for trial, but filed a motion for continuance, which was overruled. This was done, without calling the attention of the court to the information, or requesting time; but went into the trial and the jury was empaneled. It seems that appellant had not looked at the information or the date of filing the same prior to the selection of the jury. No excuse is shown for failing to do this. Nor is it anywhere made manifest that appellant's rights were injured, or that there was any pleading he desired to file, or any step he desired to take in order to get ready for trial of which he was deprived on account of his not having said two days. Under the circumstances here stated, we believe appellant did not use that diligence in demanding his right to the two days which the law would seem to require. On the contrary, his going to trial without insisting on these two days was in effect a waiver of the same.

By appellant's third bill of exceptions, he questions the action of the court permitting Sneed to testify that he saw defendant, Counts at Anson, in Jones County, last summer, and also saw Maggie Day there; did not know whether they were together or not; they stopped at the same hotel; could not say whether or not they occupied the same room. Suppose there was a charge of some kind preferred against him there at that time. Saw Counts coming to the courthouse with the sheriff and Counts asked him to go on his bond, and he went on his bond; don't know what the bond was for and never read it. They arrested Counts on some kind of charge, but did not know what it was for. Defendant objected to this on the ground that it was acts and declarations tending to show an offense in Jones County, a different county from Erath, where defendant is on trial and over which the trial court would have no jurisdiction; and tended to show an extraneous offense against defendant; that such testimony was not relevant or material, and was calculated to prejudice defendant with the jury. So far as this bill is concerned, we are left utterly in the dark as to what the bond was for. It does not indicate that it was for any offense but that he was arrested on some kind of a charge. As far as this bill shows, the arrest may have been on no charge at all. It may have been a witness bond, or bond of some character: as to this we are not informed. We do not believe the testimony was admissible; but it fails to show that the testimony was of a character to have injured appellant.

There is a bill of exceptions to the remark of the county attorney, in the presence and hearing of the jury, with regard to the marriage license. He is shown to have stated: "The original marriage license is in the possession of the defendant, and the State cannot produce it. The law requires the county clerk to send it to him, after return is made on it." The objection urged to this remark is, that it was in the presence and hearing of the jury, and referred to appellant's failure to testify. The court explains this by stating that the State offered in evidence a certified copy of the original marriage license. To this defendant objected, because it was not the original, and in answer to this objection, the county attorney, in connection with offering the evidence made the remark. We do not believe this could possibly have referred to appellant's failure to testify.

We do not believe the court erred in refusing to exclude the testimony of J. E. Boynton to the effect that he lived in about seventy-five or one hundred yards of the house that Maggie Day lived in; that on one occasion he saw appellant (Counts) drive up to the house mentioned, with a lady in the buggy with him, and saw them kissing one another; that he did not know it was Maggie Day he saw kissing defendant, but supposed it was; that he did not know who that woman was. To which testimony defendant objected at the time, because it was not shown who the woman was that Counts was with. It was not shown to be Maggie Day, and the testimony was accordingly irrelevant and immaterial. All of the environments connected with this transaction do not appear to be stated in the bill. The bill does show, however, that he saw Counts drive up to the house, as we take from the general terms of the bill, at which Maggie Day lived; and that he took the woman to be Maggie Day. Now, if it had been shown that other persons lived at said house than Maggie Day, then some question as to the identity of the party being Maggie Day might be presented. But if it is assumed that Maggie Day was the only person that lived at said house, which, in the absence of a counter-showing it seems will be presumed, then the inference is very strong that she must have been the party; and if in addition to this appellant was in the habit of driving out with Maggie Day, the inference would be still stronger. The bill does not negative this. So we take it that in the shape in which the bill is presented, the court did not err in admitting this testimony.

The State's witness, Williams, testified that he lived near Maggie Day, in the town of Dublin, Texas, and saw defendant Counts go there; that he had gone to see the officers about this affair. This testimony was objected to on the ground that it was acts and declarations of parties not in the presence of the defendant; that the question was leading, irrelevant and immaterial, and tends to show an extraneous offense, and is not admissible for any purpose. We take it that it was competent to show where Maggie Day lived, and that witness saw defendant, Counts, go there; and that it relates to the offense charged

against this appellant. The facts stated, that the witness had gone to see the officers about this affair, may not be admissible, still we fail to see how it could injure appellant. Appellant asked the following special instruction: "You are instructed that although you find from the evidence beyond a reasonable doubt that S. C. Counts and Maggie Day, did live together, and that S. C. Counts was then and there a married man, you can not convict the defendant unless you further find beyond a reasonable doubt that S. C. Counts, on or about March 14, 1905, did have carnal knowledge of the said Maggie Day, and no other woman, and exclude every other reasonable hypothesis than defendant's guilt." This charge was insisted on, because appellant says the evidence tended to show that on several occasions defendant was seen with a woman whom the witnesses did not know, and there was evidence tending to show that Maggie Day might not have been the correct name of the woman as alleged. The court gave a charge on circumstantial evidence, which we think sufficiently covered the ground of the special instruction. The jury were not required to believe that on any particular occasion the parties had carnal intercourse, but if they gathered from any occasion within the time covered by the indictment the parties lived together, and had carnal intercourse, and they found this by circumstantial evidence, it was sufficient, and the court's charge sufficiently presented this matter.

Nor was the court required to give the requested charge with reference to the county attorney's comment before the jury with reference to appellant's possession of the marriage license. As before stated, this was not and could not be considered under the circumstances a reference to the appellant's failure to testify.

Appellant further insists that this cause should be reversed, because the evidence is not sufficient to support the verdict of the jury; there being no evidence showing any act of intercourse between defendant and Maggie Day. We do not concur with this view of the case. As heretofore stated, carnal intercourse could be proved circumstantially, and we believe it was. Appellant was shown to frequent the house where Maggie Day lived, staying there at nights, furnishing and buying her supplies, groceries, etc. Maggie Day lived alone at the house. In fact, while she was living there, Counts made her house his home. His family at the time lived in another town to wit: DeLeon. He took his meals at her house, was seen regularly going there at night, and going away from there in the morning. They were constantly in each other's society, riding and walking together, going off and returning on the train together. On one occasion, appellant was seen early in the morning crawling from his room to her bed, where she was at the time lying; and on another occasion they were seen by another witness lying on the bed together. These and other circumstances shown in this record establish circumstantially that these parties were not only living together, but were having carnal intercourse.

There being no error in the record, the judgment is affirmed.

*Affirmed.*