NEWTON STOVALL v. THE STATE.

No. 8612.   Decided June 25, 1924.

Rehearing denied November 5, 1924.

1.—Murder—Charge of the Court—Responsive to Evidence.

Issues which are clearly raised by the evidence on the trial, should be given to the jury in the court's charge. The evidence in this case clearly raised the issue of murder, and the trial court did not err in submitting that issue to the jury.

2.—Same—Charge of Court—Special Charges—Not Given, When.

Where a special charge is asked by the accused in the trial below, submitting defensive issues it is not necessary for the court to give such special charge, if the issue presented has been fairly and properly covered by the main charge of the court.

Appeal from the District Court of Kaufman County.  Tried below before the Hon. Joel R. Bond, Judge.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*G. O. Crisp, A. U. Puckitt,* and *E. P. Miller,* for appellant.

*Tom Garrard,* State's Attorney and, *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

Report of former appeal will be found in 253 S. W., 536.

Appellant shot and killed the deceased H. A. Dossett. Having provided himself with a shotgun, appellant went to the express office in which Dossett was standing and shot him twice. According to the State's witnesses, several of whom testified, Dossett made no demonstration whatever and apparently was not aware of the presence of the appellant. According to the appellant he was preparing to move and took his shotgun to the express office with the intention of shipping it to his brother. He had previously been informed by his wife that Dossett had been guilty of insulting conduct towards her and had threatened to kill the appellant. When he saw Dossett going into the express office, he loaded his gun. Dossett walked to the waiting room, went in the north door and a few seconds later appeared at the door behind the "jam." Appellant had no way of knowing what the intentions of the deceased were, but having in mind the threats and outrages, and deeming his life in danger, he fired the shots which resulted in the immediate death of the deceased.

The issues of murder, manslaughter and self-defense were submitted to the jury. The principal matter advanced by the appellant upon this appeal is that which challenges the authority of the court to submit to the jury the issue of murder.

Appellant was fifty-seven years of age, his wife fifty-six, and the deceased twenty-four. The homicide occurred on the 19th of June, 1922. Appellant had married a widow, Mrs. Fry. He testified to many conversations with her touching the conduct of the deceased and went into much detail with reference to it. According to him, she related to him various acts which he construed to be on an insulting nature. She claimed that beginning in the latter part of February, the deceased had made "violent love" and indecent proposals to her, had threatened to kill the appellant if she reported the conduct to him, and that deceased had had sexual intercourse with her while she was unconscious. This it seems occurred sometime in May. On the 15th of June, she reported to the appellant that deceased had attempted to enter the house against her will. Later, his wife was spoken to on the street by deceased, and she reported to the appellant that deceased had asked her to take a ride with him, and that she warned him that he must let her alone as they were being watched. These matters came from the testimony of the appellant as a witness. Appellant said that he believed his wife's story, and had no reason to doubt it; that he packed his things for the purpose of leaving, and had wrapped his gun in a paper and left it at a barber-shop, from which place he carried it upon the occasion of the homicide.

Eyewitnesses to the homicide, in describing the conduct of the appellant, said that he gave no evidence of excitement, but on the contrary, his conduct indicated deliberation. After firing both barrels of his shotgun, he unbreached it, blew the smoke out of it, and re-loaded it without apparent emotion. Deceased was an employe of the State at the Insane Asylum. Part of his duty was to drive a vehicle in which was carried mail and packages for the inmates and employees of the asylum, and he was frequently at the express office. The express office was something over a block from the place where the appellant kept his gun. On the day of the homicide, he had gone from the shop about four minutes before the killing took place. The gun was wrapped in newspapers at the time it was removed from the shop. The barber-shop was not the appellant's place of business, but he had been there for an hour and a half or two hours at the time he left with the gun in his hands. A few monents after the homicide, in reply to an inquiry as to what was the trouble, appellant said: "Oh, I just shot a man." When asked if he killed him, he said: "I guess I did; I put two loads of buckshot in him." He said further that family trouble was the cause of the homicide.

Appellant's wife was called as a witness in his behalf. According to her testimony, she had known the deceased for a number of years. On one occasion she got into the car which he was driving and rode to the Mississippi Store. She had frequently seen him pass in his wagon. She had been sick and was ill at the time of the homicide. She said that the deceased was in no sense responsible for her illness and that she supposed that deceased had never mistreated her. She did not remember ever having told her husband so. She had been mistreated by her present and former husbands in the sense that they had abused and whipped her. She said that her mind was bad.

Appellant testified and introduced testimony to the effect that his wife's mind was impaired on account of her bad health. He denied having made any assaults upon her. Many witnesses testified that her reputation for both truth and veracity and chastity was bad, and was so before her marriage to the appellant. Circumstances indicated that appellant was in a measure responsible for her reputation and had been seen in a compromising position with her during the time that she lived with her former husband and from whom she later obtained a divorce.

The deceased was a married man and bore a good reputation.

No effort has been made to state the testimony in detail but to give a synopsis of it.

The evidence and the circumstances attending the homicide showed that the appellant intentionally killed the deceased. It is believed that the court would not have been warranted in deciding that, as a matter of law, the offense was not murder. See Jones v. State, 47 Texas

Crim. Rep., 515; Davis v. State, 70 Texas Crim. Rep., 37; Squyres v. State, 92 Texas Crim. Rep., 162. Unquestionably it was the duty of the court to call upon the jury to determine the grade of the offense, if any. The jury rejected the theory of self-defense, and upon the issue of manslaughter there were three questions of fact, namely, first: Was the appellant informed of insulting conduct to his wife by the deceased? Second: Was the meeting the first? Third: Was the act committed while the mind of the appellant was, by the information mentioned, rendered incapable of cool reflection? Pitts v. State, 29 Texas Crim. App., 374; Gillespie v. State, 53 Texas Crim. Rep., 168; Jones v. State, 47 Texas Crim. Rep., 515; Jones v. State, 33 Texas Crim. Rep., 492; Squyres v. State, 92 Texas Crim. Rep., 163. It is to be noted that the issue of insulting conduct comes alone from the testimony of the appellant. In deciding whether the communications had been made to him by his wife, all the facts bearing upon that issue were available to the jury, including the interest of the appellant, who testified as a witness in his own behalf. There was no imperative obligation upon the jury to believe that his story was true. Its effect upon his mind was likewise a question of fact, and upon this issue, the reputation of his wife and his previous conduct toward her were elements which the court would not have been justified in ignoring. Stovall v. State, 253 S. W. Rep., 526; Bibb v. State, 86 Texas Crim. Rep., 124. Moreover, the acts and declarations of the appellant going to show preparation and deliberation and the absence of excitement at the time the homicide was committed, are matters supporting the action of the court in calling upon the jury to determine whether the offense was murder, or manslaughter. Bowlin v. State, 248 S. W. Rep., 398.

The court instructed the jury in substance that the information of insulting words and conduct by the deceased towards the wife of the appellant would be adequate cause to reduce the homicide to manslaughter, provided the homicide took place upon the first meeting of the parties after the information came to the appellant. The court also instructed in substance that it was sufficient that the information be received and believed. Appellant asked a further charge upon that subject, from which we quote:

"That where a person accused of murder seeks to justify himself on the grounds of insulting words or conduct to a female relative, you are charged that if the defendant believed the report to such insulting words or conduct (but that you further believe that the same was untrue), and if the defendant acting upon such belief and laboring under such passion which reasonably rendered his mind incapable of cool reflection, he killed the deceased on their first meeting after being apprised of the insult, if any, and that he was not acting in his own self-defense, as self-defense is defined in the main charge, then he would be guilty of no higher grade of offense than manslaughter."

It is believed that under the record, as presented, there was no error in refusing this charge. The subject was covered in the main charge. The special instruction is subject to the criticism that it indicates to the jury that one might *"justify"* upon insulting words and conduct. The law does not make such words and conduct a justification but mitigation only. The charge also assumes that appellant had been informed of the insulting words and conduct. This was a controverted issue of fact. The manner in which the issue in question was submitted in the main charge was not made the subject of exception, and in the charge given we have observed no such fault as would have made it incumbent upon the court to give the special charge in question and thereby indulge in repetition.

Finding no error warranting a reversal, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

LATTIMORE, JUDGE.—We regret that we cannot agree with the contention made in the motion for rehearing that the learned trial judge erred in submitting to the jury the theory of murder in this case. We regard the case on its facts as essentially different from Maddox v. State, 252 S. W. Rep., 800. The manner and method of the killing and the antecedents thereof as fully revealed by this record, seem to us to justify the learned trial judge in submitting to the jury the law of murder, and also to have justified the jury in finding appellant guilty of that offense.

That part of special charge No. 1, complaint of the refusal to give which is again urged in the motion, was fully covered by the main charge under which appellant was given the benefit of an instruction telling the jury that if he believed statements of reports that had been made to him in regard to insults offered to his wife, that he would be justified in acting upon such belief, as fully as if the matter stated to him had been true.

The motion for rehearing will be overruled.

*Overruled.*