## Jack Moore v. The State.

### No. 10013.    Delivered March 14, 1926.

**1.—Murder—Charge of Court—Held Correct.**

Whether a homicide is murder, or manslaughter, depends upon the condition of the mind of the appellant at the time of the killing, and is a question of fact for the jury to pass upon, and while the evidence may clearly raise the issue of manslaughter, and be uncontradicted, it is for the jury to pass upon, and it is their province to believe or to reject such evidence. In the instant case there was no error in the trial court submitting the issue of murder to the jury in his charge, facts and circumstances surrounding the killing demanding the submission of that issue. Distinguishing Doss v. State, 43 Tex. Crim. Rep. 555, and Stewart v. State, 52 Tex. Crim. Rep. 284. Following Bowlin v. State, 93 Tex. Crim. Rep. 452 and other cases cited.

**2.—Same—Charge of Court—On Adequate Cause—Harmless Error.**

Where the court in his charge submitted the general definition of adequate cause, and in applying the law submitted only the issue of insulting words or conduct of deceased toward appellant's wife, as adequate cause for reducing the offense to manslaughter, we do not believe the incorporation of the general language complained of calls for a reversal, although it would have been better practice to have omitted the general definition complained of by appellant. Distinguishing Squires v. State, 92 Tex. Crim. Rep. 160. Following Bowlin v. State, supra.

**3.—Same—Wife as a Witness—Subject to Impeachment.**

Where on a trial for murder, the wife testified to insulting words and acts of deceased toward her, as the cause of homicide, there was no error in permitting the state on cross-examination to ask her if it was not a fact that prior to the trial she had told witnesses that deceased had never mistreated her, had always treated her nice, as nice as could be expected of anyone and on her denial to contradict her. The wife of a defendant may be impeached by proof of contradictory statements as to material matters inquired about on her examination in chief. Following Bell v. State, 88 Tex. Crim. Rep. 64 and other cases cited.

**4.—Same—Charge of Court—Limiting Impeaching Testimony—Held Error.**

Where in his charge limiting the testimony of impeaching witnesses, the court instructed the jury that such testimony was admitted *solely for the purpose of impeaching the said Mrs. Moore,* such charge is upon the weight of the evidence, and the error necessitates the reversal of the case. See Stull v. State, 47 Tex. Crim. Rep., and other cases cited.

Appeal from the District Court of Milam County. Tried below before the Hon. John Watson, Judge.

Appeal from a conviction of murder, penalty fifty years in the penitentiary.

The opinion states the case.

*Wood & Wood* of Granger, *J. F. Taulbee* of Georgetown and *O. D. Graham* of Thorndale, for appellant.

*A. J. Lewis,* County Attorney; *E. A. Camp, Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment being assessed at confinement in the penitentiary for a term of fifty years.

The prosecution grew out of the killing of J. T. Davis. Deceased was plowing in his field at the time of the killing, which occurred on Monday morning. Appellant fired two loads of buckshot into his body from a single-barrel shotgun. Deceased lived on a rented farm. Appellant had been working for him several months, living on the same farm with his wife and child some two or three hundred yards from the house occupied by the deceased and his family. Appellant did not testify. The record contains little evidence of motive for the killing from the standpoint of the state. Appellant's principal witness was his wife. She testified that shortly after they moved to the farm deceased began making complimentary remarks to her when they were alone together; that she thought little of this until some three or four weeks before the killing, when deceased came to her house and put his arms around her; that she repelled this advance but made no report of it to her husband or anyone else, believing it would not be repeated by deceased; that on Saturday morning before the killing on Monday he again came to the house at a time when appellant was in the field plowing and at this time deceased sought to induce her to engage in an act of intercourse with him, took hold of her and attempted to force her on the bed; that she released herself and went into

the yard, telling deceased she would report the matter to her husband, whereupon deceased told her if she did so he would kill appellant; that deceased's conduct preyed upon her mind, and she was frequently crying between then and Monday morning; that upon being asked by the appellant what was the matter she passed it off by telling him she had the sick headache; that the reason she did not report the matter sooner was because she feared deceased would kill her husband if she reported it; that on Monday morning appellant again insisted on knowing what was disturbing her, and she then related to him in detail the conduct of the deceased, and also told him deceased had threatened to kill him if she reported the matter. Relative to the effect her information had upon appellant Mrs. Moore says: "When I was telling Jack that he was sitting there in the chair looking down; I just glanced at him and I noticed his voice was kinda chokey and there was tears coming out of his eyes and running down his cheeks." There is no testimony from appellant nor any other witness throwing further light upon his state of mind at the time of the killing than the evidence just quoted. Mrs. Moore further testified that he sat there a short time after she told him, then went into the other room; that she did not know when he left the house but discovered in a few minutes that he had gone and that the gun was also gone; that the next time she saw appellant was some thirty or forty minutes later, and after the killing.

It is contended by appellant that under the circumstances related the court was not authorized in submitting the issue of murder. The evidence shows that at the time appellant left the house with the gun he did not take his usual route, but approached the point where deceased was plowing by following branches and ditches which would to some extent at least hide him from view. While the evidence of Mrs. Moore raised the issue of manslaughter, it was the province of the jury to determine the state of appellant's mind at the time of the killing, and they could properly consider upon this point the manner of his approach to the scene of the homicide. A witness who heard the shots saw a party running from the place of the killing immediately after the shooting. The jury could also look to this in determining appellant's frame of mine. The state also had introduced evidence to the effect that deceased was plowing in his field on Saturday at the time appellant's wife claimed he was at her house and offered the insult. The case of Doss v. State, 43 Tex. Cr. R. 555, Stewart v. State, 52 Tex. Cr. R. 284, cited by appellant in support of his proposition that the issue of murder should not have been submitted, are

regarded as exceptional cases and contrary to the general rule which commits to the jury the province of determining the state of mind in which the killing was done. Bowlin v. State, 93 Tex. Cr. R. 452, 248 S. W. 396; Stovall v. State, 265 S. W. 572; Squires v. State, 92 Tex. Cr. R. 160, 242 S. W. 1024.

In the charge upon manslaughter the court told the jury that: "By the expression 'adequate cause' is meant, such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Any condition or circumstance which is capable of creating and does create passion, such as anger, rage, resentment or terror rendering the mind incapable of cool reflection, is deemed adequate cause."

The use of this language was excepted to upon the ground that the facts did not call for any general instruction upon "adequate cause" for the reason that the only evidence raising such issue was the claimed insult by deceased to appellant's wife, and that the court should have limited the charge to advising the jury that this would be "adequate cause" as a matter of law. The court did incorporate this latter instruction. After telling the jury that insulting words or conduct towards appellant's wife would be adequate cause, he further told them if deceased put his arm around appellant's wife or tried to induce her to have carnal intercourse with him or did any act or spoke any words of like import, that it would in law constitute insulting conduct and would be "adequate cause." The general definitions of adequate cause which are complained of were not carried forward in applying the law to the facts and in this respect the present case differs from that of Squires v. state, supra, but is like the Bowlin case, supra. In applying the law the court submitted only the issue of insulting words or conduct of deceased towards appellant's wife as adequate cause for reducing the offense to manslaughter, and we therefore do not believe the incorporation of the general language complained of calls for a reversal. However, we would suggest that in the event of another trial under a similar state of facts, it would not be inappropriate for the court to omit from the charge the language objected to.

After appellant's wife had testified to the insults as heretofore related and that she had communicated them to her husband on Monday morning a short time before the homicide, she was asked upon cross-examination if a short time after the homicide Dunham and Fleming did not ask her if deceased had ever mistreated her or her husband, and if she did not reply, "No, not that I know of. Mann Davis (deceased) had always

treated me nice, as nice as could be expected of anyone." Appellant urged many objections to this question, one being that it was an inquiry with reference to a matter not developed on examination in chief, another that it was calling the wife of appellant as a witness against him, another that it sought to lay a predicate for impeachment on an immaterial issue, and various others not necessary to specify. None of the objections are tenable. In Section 153, Branch's Ann. Tex. P. C. is found the following proposition:

"The wife of the defendant may be impeached by proof of contradictory statements as to material matters inquired about on her examination in chief."

Many authorities are cited in support of the text. See Exon v. State, 33 Tex. Cr. R. 469, 26 S. W. 1088; Crews v. State, 34 Tex. Cr. R. 545, 31 S. W. 373, and others collated under said Sec. 153. If appellant's wife made to Dunham and Fleming the statement inquired about there is no room for argument that it was contradictory of her testimony upon the trial that deceased had insulted her and was germane to her examination in chief. The State could legitimately inquire into it as touching her credibility. Bell v. State, 88 Tex. Cr. R. 64, 224 S. W. 1108; Hicks v. State, 97 Tex. Cr. R. 373, 261 S. W. 579. The latter case is very similar upon the facts to the present one. The witnesses Dunham and Fleming were called and over like objection from appellant affirmed that his wife had made the statement substantially as inquired of her in cross-examination. No error was committed by the court in this respect.

In the court's charge as originally prepared and submitted to counsel for examination no limitation was placed upon the testimony of Dunham and Fleming in regard to the matter last above discussed. Proper objection was made because of such omission. Responding to the exception the court inserted in his charge paragraph 14a upon that issue as follows:

"The testimony of the witnesses John Fleming and Dolph Dunham relative to a conversation with Mrs. Lillie Moore at John Morris' house was admitted solely for the purpose of impeaching said Mrs. Moore as a witness, and if you consider such testimony at all it must be considered for the purpose for which it was so admitted and none other."

Appellant then excepted to the charge as being upon the weight of the evidence. The court declined to amend the charge, and it went to the jury in the form set out. It was necessary for the court to properly limit the testimony of these witnesses, otherwise it might have been appropriated by the

jury as original evidence against appellant upon the question of guilt. Without such instruction the jury might have reasoned that if she made the statement attributed to her she then spoke the truth and therefore she was not offered any insult by deceased, and that the killing was not the result of a communication to this effect by her to appellant. It must be borne in mind that the wife was the only witness whose evidence raised any defensive issue whatever and that going only to the extent of raising the issue of manslaughter as a defense to murder, hence the importance that a charge touching her testimony be so worded as not to be upon the weight of the evidence. It must further be remembered that she denied the conversation affirmed by Dunham and Fleming. This raised an issue of fact. It should have been left to the jury to find whether she made the statement attributed to her by the two witnesses, and then also to determine under appropriate instructions, if she did make it, whether it affected her credibility. It is contended that the charge given upon the subject violated both rules in that it assumed she did have the conversation, and also told the jury that the effect of her statement was to discredit her as a witness. In support of his position appellant cites many authorities. See Stull v. State, 47 Tex. Cr. R. 547, 84 S. W. 1059; McCleary v. State, 57 Tex. Cr. R. 139, 122 S. W. 26; Cavaness v. State, 45 Tex. Cr. R. 209, 74 S. W. 908; Taylor v. State, 50 Tex. Cr. R. 560, 100 S. W. 393; Counts v. State, 49 Tex. Cr. R. 329, 89 S. W. 972. The charge condemned in Counts' case is very similar to the one now under consideration. After reciting the impeaching evidence it says this "was offered and admitted before you for the purpose only of impeaching the defendant as a witness in this case, and you will consider said evidence for the purpose for which it was admitted before you and for no other purpose." This charge was held to be on the weight of the evidence. The only difference we observe between that and the present charge is that here the court left it optional with the jury whether they would consider the impeaching evidence, but inadvertently fell into the error of telling them if they did consider it the effect would be to impeach Mrs. Moore instead of wording the charge in such manner as left the jury free to say whether in their judgment it did affect her credibility. The charge affected a witness whose evidence was vital.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*