EX PARTE SIMON PURVIS.

No. 8527. Decided February 13, 1924.

**Habeas Corpus—Murder—Manslaughter—Bail—Express Malice.**

This court cannot say as a matter of law that all killings which result because of alleged insult to a female relative are manslaughter only, and the

question of whether express malice is shown is a proper inquiry in order that the court may determine whether bail should be permitted, and from the facts in the instant case the judgment below denying bail is affirmed. Following Ex Parte Jones, 31 Texas Crim. Rep., 422, and other cases.

Appeal from the District Court of Panola. Tried below before the Honorable C. L. Brachfield.

Appeal from a habeas corpus proceeding denying bail.

The opinion states the case.

*Long & Strong* and *A. D. Nelson,* for relator.—Cited: Ex Parte Miller, 41 Texas, 213; Wheeler v. State, 54 Tex. Crim. Rep., 47; Ex Parte Marshall, 244 S. W. Rep., 1007.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, and *Woolworth & Duran* and *B. W. Baker,* for the State.—Cited: Breedlove v. State, 9 S. W. Rep., 768; Ex Parte Jones, 20 id., 983.

HAWKINS, JUDGE.—Appellant is charged with the killing of Dr. B. N. Oden.

From an order of Hon. Charles L. Brachfield, Judge of the 4th Judicial District remanding him without bail, relator appeals.

Deceased was found dead in his yard. Facts proven indicate that he had been shot while in the hall of his house from a point inside deceased's room. No one was present except the party doing the killing. A high-power rifle ball was found imbedded in the wall of the room across the hall from that occupied by deceased and was removed. The shot that killed deceased went through his body. The ball fit shells found in relator's possession. His shoes were fitted in tracks found by the officers and corresponded exactly. If we correctly understand the significance of the tracks they showed an approach to deceased's house by an unusual course. Measurements were made of horse tracks which tallied with those of a horse belonging to relator. He explains his presence in the woods near deceased's house by saying he was hunting hogs. When first questioned about the matter he denied knowing Dr. Oden, but later admitted that he owed him a bill for treating his wife, and explained an inquiry made by him as to deceased's whereabouts by claiming that he was hunting him to advise deceased he could not pay the bill for which he says the doctor was dunning him every few days. Forshee was a neighbor of relator. On the day of the killing between two and three o'clock relator went to Forshee and inquired if he (Forshee) knew that Doctor Oden had doped relator's wife and had intercourse with her. He did not tell Forshee that his wife told him this was true but insisted on the witness going to relator's house and talking to his wife. Witness did this and the only thing that Mrs. Purvis told him after

being directed by relator to tell him about the matter was that Dr. Oden would come to her window and she would go crazy and would not know anything after that. After this Forshee returned·to his home and relator went back again and wanted to borrow witness's gun, asking "if it snapped", and said he did not want to use his 30-30 rifle as everybody would know who did it. He told Forshee that he intended to kill Oden. Witness declined to loan relator his gun. About seven o'clock that night relator again went to the home of witness Forshee and requested him and his family to go over and stay a while with relator's family, and said, "Everything up yonder is over."

Upon the habeas corpus hearing appellant offered no testimony. It will be seen from what has been stated heretofore that appellant was asserting to his neighbor that deceased had been guilty of improper conduct towards relator's wife, but there is no testimony that he had ever been informed that such was true by his wife or any one else and his wife did not confirm this statement except inferentially in what she said to her neighbor Forshee. The evidence is clear that relator not only made threats to take the life of deceased but was planning with deliberation to execute the threat in such a way that suspicion would not be fastened upon him and for this reason was seeking to borrow his neighbor's gun, not desiring to use his own high-power rifle for fear that circumstance might point suspicion at him. This court can not say as a matter of law that all killings which result because of alleged insult to a female relative are manslaughter only. We had occasion to discuss this matter at some length in the recent case of Bowlin v. State, 93 Texas Cr. Rep., 452, 248 S. W. Rep., 396. In determining whether a party is entitled to bail as a matter of right, although the degrees of murder are now no longer recognized in this state, the question of whether express malice is shown is a proper inquiry in order that the court may determine whether bail should be permitted. In this connection we think the language of Judge Simkins in Ex parte Jones, 31 Texas Crim. Rep., 422, 20 S. W. Rep., 983 is pertinent to the facts before us in the present case.

"The law makes no allowance for the passion of revenge. While it concedes something to the instinctive, unreasoning passion that blindly strikes, it has no sympathy with the vindictive, calculating spirit that deliberately premeditates and maliciously acts. There may be injuries which do not come within the purview of Pen. Code, arts. 597, 598, yet are so grave that the mind, however long the interval, would not ordinarily dwell calmly and deliberately upon them, and a homicide committed in consequence thereof may not be greater than murder in the second degree. Yet, even in such cases, if the evidence renders it certain that the mind of defendant was in fact, calm and deliberate when the design to kill was formed, or that, when

it was executed, it was done in pursuance of a formed design, as manifested by the threats to take life, by the purchase and exhibition of weapons procured for that purpose, to be consummated whenever the parties should meet, 'and at the time of the killing there was no excitement other than that naturally attending such an act, but the same is committed calmly and coolly, or covertly, it is murder upon express malice.''

The case is imperfectly developed as frequently occurs upon habeas corpus hearings but it is necessary for us to determine the question of bail from the facts before us and from them we believe the learned trial judge was not in error in his order relative to the matter and the judgment is therefore affirmed.

*Affirmed.*