### SIMON H. PURVIS V. THE STATE.

No. 8889. Delivered Oct. 21, 1925.

Rehearing denied June 9, 1926.

**1.—Murder—Charge of Court—On Murder—Properly Submitted.**

Where, on a trial for murder, appellant defends on the ground of an insult and injury done appellant's wife by deceased, and the evidence discloses deliberate planning of appellant, with a view of concealing his identity as the slayer and a denial of acquaintanceship with deceased, after the killing, there was no error in the submission by the trial court of the issue of murder.

**2.—Same—Continued.**

Although the only motive for a killing appears to be a claimed insult to a female relative, and the killing is on the first meeting, yet it ordinarily remains for the jury to determine whether the killing occurred under circumstances showing a manslaughter state of mind. See Davis v. State, 70 Texas Crim. Rep., 37, and other cases cited.

**3.—Same—Evidence—Properly Excluded.**

Where on a trial for murder appellant offered to prove by a neighbor of deceased that he had opened a letter found in his mail box, which was intended for deceased, from some woman, showing illicit relations between herself and deceased, such evidence was properly excluded, it not being contended that such letter was written by deceased's wife, it was not relevant to any issue on the trial. See Terrell v. State, 88 Texas Crim. Rep., 599, and other cases cited.

**4.—Same—Evidence—Harmless, if Error.**

Where a witness was permitted to exhibit a bullet from a 30-30 rifle and to testify that the bullet was the one which killed Dr. Oden, while such testimony embraced the opinion of the witness, in the light of other

testimony of two empty shells from a 30-30 rifle, being found at the scene of the killing, and the admission of the appellant upon the trial that he had killed the deceased with a 30-30 rifle, we do not regard the statement complained of, such as would call for a reversal.

### 5.—Same—Charge of Court—Objections to, When Corrected—No Error Shown.

Where, upon objections to a charge being made, the court corrects the main charge to meet the objections raised, and also gives special charges requested by appellant covering the issues pointed out in his objections, no error is presented. The court very properly and fairly submitted appellant's theory that it was not necessary for him to show that deceased actually had intercourse with appellant's wife, but that if he had given her "dope" and entered her room with intent to have such relations with her, such acts would constitute adequate cause.

### 6.—Same—Charge of Court—On Adequate Cause—Held Correct.

Where on a trial for murder, the defense of insult to a female relative is raised, and also from an admission of deceased, at the time of the killing, or from any other adequate cause, arising at the time of the killing, the charge should affirmatively submit these matters so the jury will understand that either provocation would be sufficient to reduce the homicide to manslaughter, passion being present. See Richardson v. State, 20 Texas Crim. App., 221.

### 7.—Same—Continued.

We do not understand, however, that the language contained in appellant's requested charge, and attributed to the deceased at the time of the killing to have been an admission by him that he had not been guilty of insulting conduct, toward appellant's wife, but on the contrary was a vehement denial thereof, and the special charge was properly refused.

### 8.—Same—Charge of Court—Held Correct.

Where the jury were instructed that insulting conduct toward the wife of appellant by deceased would constitute adequate cause provided the killing took place so soon thereafter as appellant met with deceased, after having been informed of the insulting conduct, there was no error in refusing a special charge requested by appellant presenting this same phase of the law of manslaughter.

### 9.—Same—Argument of Counsel—Improper in Part—But Not Reversible Error.

Where appellant defended upon the ground that the killing was due to an insult offered his wife by deceased and did not present his wife, who was present on the trial as a witness, it was proper for the prosecuting attorney to comment upon this fact. Reference of prosecuting attorney to the father of appellant's wife, who was not a witness in the case, was not proper, but was not of such nature as would warrant the reversal of the case. Distinguishing Stiles v. State, 91 Texas Crim. Rep., 461.

ON REHEARING.

### 10.—Same—No Error Shown.

We have carefully examined appellant's motion for a rehearing, and have re-examined the record in the light thereof, but have perceived nothing which in our opinion would warrant a reversal of the cause, and the motion for rehearing is therefore overruled.

Appeal from the District Court of Panola County. Tried below before the Hon. Chas. L. Brachfield, Judge.

Appeal from a conviction of murder, penalty ten years in the penitentiary.

The opinion states the case.

*Long & Strong* and *A. D. Nelson* of Carthage, *Fairchild & Redditt* of Lufkin, for appellant.

*J. G. Woolworth* and *B. W. Baker* of Carthage, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for the murder of D. N. Oden, his punishment being assessed at confinement in the penitentiary for 10 years.

It is contended that the court was in error in submitting the issue of murder, appellant asserting that the evidence at most would support a conviction for manslaughter only. Deceased was a physician living about three miles from the home of appellant. The latter had been away from home for a considerable time working but visited his wife and family about every two weeks. During his absence his wife had been seriously ill. Deceased and another physician had been attending her. Appellant claimed that some two months before the homicide he received a letter from his wife insisting that he come home after which she objected to his leaving again; that he noticed a change in her appearance and frequently found her crying. He claims to have found a receipt for a registered letter from his wife to deceased which aroused his suspicion. It appears from the testimony that he wrote a decoy letter to deceased for the purpose of inducing him to come to appellant's house. Deceased did not respond to this letter. Appellant denied that it was his purpose to kill deceased if he had appeared in response thereto, but that he only wanted to assure himself whether there was misconduct of his wife with deceased. Appellant placed this letter in the mail box of deceased but the latter, not appearing in response thereto, appellant went to the mail box to ascertain if the letter had reached its intended destination. As we understand the record this occurred a few days before the homicide which occurred on the 28th of December. It is in evidence that appellant had invited deceased (whose wife at the time was in Louisiana)

to take Christmas dinner with appellant and his family, which invitation deceased declined. Deceased was killed shortly after dark. Appellant claims that in the afternoon of that day he insisted that his wife tell him what had been disturbing her, and that she then for the first time told him deceased had "doped" her, had come to her window and crawled to her bed. Appellant went to a neighbor by the name of Forshee and insisted that he go to the home of the appellant and hear his wife's statement as to deceased's conduct. The statement made by her to Forshee was that "Dr. Oden would come to her window and she wouldn't know anything else." She did not tell Forshee that deceased had done anything more than that. Appellant also went to another neighbor for the purpose of advising with him about the matter but this neighbor was absent from home. Later in the day appellant again went to the witness Forshee and asked if his (witness') gun snapped, saying he (appellant) did not want to use his 30-30 rifle because "they would know it." He stated to this witness a number of times that he had made up his mind what he was going to do, that he intended to kill deceased. Forshee did not let appellant have his gun. Some two or three hours after this last conversation and between 7:30 and 8:00 o'clock appellant again called at the Forshee residence and said "everything is over with at Dr. Oden's." The matters so far related were not known to the officers at the time of the killing but were ascertained later. On the morning after deceased was killed his body was found in the yard near his front gallery. Blood was found in the house and bullet marks discovered indicating that two shots had been fired from the inside of the house. Tracks of a horse were found at a point near the home of deceased. From that point the tracks of a man lead to deceased's residence. The officers for some reason suspected appellant. They measured the feet of his two horses and compared them with the horse tracks found. One of them, which appellant stated was his main saddle horse, did not correspond at all, the other corresponded exactly. At this time appellant denied that he knew deceased at all. After being arrested the shoes of appellant were taken and placed in the man's tracks which lead to the residence of deceased. They fitted exactly. Upon the trial appellant admitted the killing. He attempted to explain his conduct at the time the officers were investigating by stating that he did not want his wife's name to be drawn into the matter. He claims to have gone to the home of deceased not

for the purpose of killing him, but to find out why he had mistreated appellant's wife; that when he reached the home of deceased he found a notice on the gate written by the latter for the purpose of advising his patients where he had gone and which stated he would be back before dark; that he went into deceased's house and remained on the back porch until deceased appeared, which was some hour and thirty minutes later.   Appellant claims that when deceased appeared appellant said to him, "Dr. Oden, I have come up here to find out why you doped my wife and mistreated her," to which deceased replied, "You are a g— d— liar," or "Whoever says that tells a g— d— lie;" that deceased ran at appellant, grabbed him, and the gun was first discharged in the scuffle; that deceased then came at him again at which time he fired the shot which resulted in deceased's death.

Under the circumstances stated we are not warranted in holding as a matter of law that the court should have refrained from submitting the issue of murder nor that the verdict finding appellant guilty of that offense is not sustained by the evidence.   Although the only motive for a killing appears to be a claimed insult to a female relative and the killing is on first meeting, yet it ordinarily remains for the jury to determine whether the killing occurred under circumstances showing a manslaughter state of mind.   Davis v. State, 70 Texas Crim. Rep. 37, S. W.; Bowlin v. State, 93 Texas Crim. Rep. 452, 248 S. W. 396; Stovall v. State, 95 Tex. Crim. Rep. 189, 253 S. W. 526; Ex Parte Purvis, 96 Texas Crim. Rep. 490, 258 S. W. 478; Stovall v. State, 265 S. W. 572.   The testimony of the witness Forshee is to the effect that on the visit of appellant to his house when he inquired about a gun and stated that he did not desire to use his own for the reasons heretofore stated appellant seemed to be in a less excited frame of mind than when he first discussed the matter of the claimed insult to appellant's wife.   The evidence discloses deliberate planning of appellant with a view of concealing his identity as the slayer, and a denial of acquaintanceship with deceased after the killing which is inconsistent with the acts of one swayed by passion.

Appellant offered to prove by *C. A. Odom* that he was on the same mail route with deceased *Oden;* that a short time before the killing he got a letter in a woman's handwriting in his mail box, and started to read it, when, finding it was not for witness he sent it to deceased by his son, but did not know whether deceased ever received it.   It was appellant's contention that

he should be permitted to prove the contents of the letter which indicated it was from some woman who invited deceased to call on her and spoke of the good times they had had together. There is no pretense that this letter was from appellant's wife, but the contention is that the contents of the letter was admissible as showing the character of deceased in relation with women generally. The bill may be disposed of by the court's qualification thereto which is "that there was nothing in the testimony of witness to show that the deceased was connected with the letter, nor was there a woman's name connected with the sending of same to defendant by the handwriting." We assume that where the word "defendant" is last used it should have been "deceased." The court's ruling in excluding the proffered evidence presents no error. Terrell v. State, 88 Texas Crim. Rep. 599, 228 S. W. 240; Hollingsworth v. State, 80 Texas Crim. Rep. 299, 189 S. W. 488; James v. State, 40 Texas Crim. Rep. 190, 49 S. W. 40; Kachel v. State, 96 Texas Crim. Rep. 86, 256 S. W. 263.

W. H. Matthews exhibited before the jury two empty shells from a 30-30 rifle and a bullet which he said had killed Dr. Oden. The bullet was taken out of the house and given to witness by one LaGrone. It was from a 30-30 rifle shell. As we understand the bill the complaint is that the statement "the bullet is the one which killed Dr. Oden" was a conclusion of the witness. In view of LaGrone's evidence showing where the bullet was found by him in deceased's residence and that he had given it to witness Matthews, in connection with the admission of appellant upon the trial that he had killed deceased with a 30-30 rifle, we do not regard the statement complained of such as would call for a reversal.

Objections in writing were made to a certain paragraphs of the charge. By indorsement on the objections the learned trial judge states that paragraphs nine and ten were re-written and special charges four and six were given in response to said objections. The gist of the exceptions was that the charges were too restrictive in requiring the jury to find that deceased actually had intercourse with appellant's wife before manslaughter would arise. Reading paragraphs nine and ten as they now appear in the records, and special charge number six we think the criticism not tenable. The jury were told specifically in the special charge that although they did not believe that deceased actually had intercourse with appellant's wife, but that he did give her drugs or "dope" and entered her

room with intent to have such relations with her, and this fact was communicated to appellant and he believed it to be true, whether it was in fact true or untrue, that it was sufficient to create adequate cause and provocation. There was no likelihood of the jury being mislead or confused upon this point.

Appellant sought by a requested charge to have the jury instructed that if appellant's wife had told him deceased had used insulting conduct towards her which created in appellant's mind such degree of anger as would render him incapable of cool reflection, but that before he saw deceased appellant's mind had became cool and deliberate and he was capable of cool reflection, but that upon seeing deceased appellant demanded an apology or explanation why deceased had so treated appellant's wife, and that deceased replied, "Whoever said I doped your wife told a g— d— lie," and that said language created in appellant's mind sudden passion or resentment which rendered him incapable of cool reflection, then said language would be adequate cause. This charge is predicated on the theory that the language set out therein would be a fresh provocation which as a matter of law would be adequate cause to reduce the killing to manslaughter. It is well understood if manslaughter is in the case from the standpoint of previous insults to a female relative, and also from an admission of such insult by deceased at the time of the killing, or from any other adequate cause arising at the time of the killing, the charge should affirmatively present these matters so the jury will understand that either provocation would be sufficient to reduce the homicide to manslaughter, passion being present. See Richardson v. State, 20 Texas Crim. App. 221, 12 S. W. 870, and many other cases cited by Mr. Branch under Sec. 2039 of Branch's Ann. P. C. We do not understand the language contained in the charge and attributed to deceased at the time of the killing to have been an admission by him that he had been guilty of insulting conduct toward appellant's wife, but on the contrary a positive and vehement denial thereof. The charge as framed was upon the weight of the evidence and did not contain a correct statement of the law. The court was not authorized to tell the jury that the language would as a matter of law be "adequate cause." The court did at appellant's request in another special charge tell the jury that in determining the adequacy of the provocation to consider all the facts and circumstances in evidence in the case, and if they found that by reason thereof appellant's mind was at the time

of the killing incapable of cool reflection and that such facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof of provocation satisfied the law and that in determining these facts the jury should consider all the facts and circumstances in evidence in determining the condition of appellant's mind at the time of the killing. Upon this phase of manslaughter appellant did not ask for a more specific instruction than the one just adverted to which was given at his request.

By special charge the court was requested to instruct the jury that where insulting conduct to a female relative was relied on as adequate cause it was not necessary that sudden passion arise at the time of the killing, but that it may have arisen at the time appellant was informed of such conduct, and if passion did arise at such time and continued to operate on his mind, and at the first meeting he killed deceased, appellant would be guilty of no greater degree of homicide than manslaughter. This charge unquestionably states the law. Its refusal would be error if there was anything in the court's charge which would lead the jury to believe that the passion must have arisen at the time of the killing. We find some exceptions were presented to the charge because it was supposed to contain something of that character, but if so the charge was corrected in response to the objection. Nowhere in it do we find an intimation that the passion must have arisen at the time of the killing if predicated on insult to appellant's wife. On the other hand the jury are pertinently told that insulting conduct by deceased towards appellant's wife would constitute adequate cause provided the killing took place so soon thereafter as appellant met with deceased after having been informed of the alleged insulting conduct. Reading the main charge in connection with the special charge given upon the subject we can not hold erroneous the refusal of the requested instruction now under consideration.

Complaint is made at certain language used by the district attorney in his closing argument, as follows:

"They refused to place the wife of defendant on the stand and testify for her husband and then plead with you to send this man back to his wife and talk about their home. Gentlemen, that woman would not sit upon the witness stand and tell a lie in the presence of Jim Moore, her father. You needn't worry about this woman having a home. I know Jim Moore and there never lived a better man in Shelby county, and you

can rest assured that he will take care of this woman and she will be better off with him than she will be with this defendant."

Objection was on the ground that there was no testimony to substantiate the statements, that it was improper, as Jim Moore, the father of appellant's wife, was not a witness. The court attached to the bill the explanation that the argument was in reply to that made by defendant's counsel urging the jury not to take appellant away from his wife, but to send him home to his wife and children to make a support for them. Although the defense was predicated on an insult claimed to have been offered by deceased to appellant's wife he refrained from placing her upon the witness stand. Reference by the district attorney to such failure was not improper. We observe nothing in the argument complained of not pertinent in reply to the argument of appellant's counsel save the statement that the district attorney knew "Jim Moore and that there never lived a better man in Shelby county." This statement ought not to have been made. If it injected into the case an issue detrimental to appellant we would not be inclined to hold the argument harmless, but Moore had not testified. He was not a party to the prosecution or defense. The statement could not have been appropriated by the jury as supporting or challenging any testimoy in the record. While improper, we are not inclined to hold the statement to be of such injurious character as calls for a reversal. A remark similar to the one here adverted to was criticised in Stiles v. State, 91 Texas Crim. Rep. 461, 239 S. W. 963, and a reversal ordered by reason of it but the facts were entirely different. The party relative to whom the statement was made in that case was the deceased and the language bore upon his character.

Finding no error in the record which calls for a reversal, the judgment is ordered affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—We have carefully read the appellant's motion for rehearing and have re-examined the record in the light therof, but have perceived nothing in either which, in our opinion, would warrant a reversal of the judgment. The disposition of the case on the original hearing is deemed correct.

The motion is overruled.

*Overruled.*