MACK HOUSTON v. THE STATE.

No. 12127. Delivered April 10, 1929.

The opinion states the case.

*Conrad E. Smith* of Houston, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant and E. V. Powell were jointly indicted for the robbery of Joe A. Caldron. Appellant was alone upon trial which resulted in a conviction with an assessed penalty of ten years in the penitentiary.

Caldron worked at a gasoline filling station in Houston. On the night of October 5th, 1927, at about fifteen minutes to twelve o'clock two men in a Chrysler roadster drove into the filling station. When Caldron approached to wait on them one presented a pistol at him commanding him to put his hands. He did so and the man with the gun told him not to put them up "that way but to place them on the door of the car." While he was kept in this position the driver of the car got out, went into the office and took eighty-four dollars out of the cash register, came back and got in the car. Caldron was commanded to get on the running board of the car and was taken some five blocks from the filling station before being released. At the trial he positively identified appellant as the man who held the gun on him, but failed to identify Powell as the driver of the car, stating that in his best judgment Powell was not the other robber. Caldron said the roadster was either brown or tan colored; did not know whether it had black fenders; did not know the highway number; had seen many similar cars at the station while waiting on the trade. About two weeks after the robbery appellant and Powell were arrested at a house where they claimed to have gone to get some beer. Standing in front of the house was a Chrysler roadster corresponding in a general way with the one used by the robbers two weeks before. Neither appellant nor Powell were seen in the car, and appellant testified on the trial that they walked to the house and knew nothing of the Chrysler car which was out in the street. The testimony of Ruby Martin in connection with other evidence in the record would authorize the jury to infer that appellant and Powell went to the place of the arrest in the car in question. Appellant's defense was an alibi. He claimed to have left Seminole, Oklahoma, on the afternoon of the fifth day of October—the robbery in Houston having occurred that night—and that he did not arrive in Houston until the night of October 7th. Upon the car found in front of the house where appellant and Powell were arrested was only one license plate, being No. A 41–011. In the car were found

certain kinds of pistol shells corresponding in size to the pistol found in appellant's possession when he was arrested.

After appellant's arrest the officers procured a warrant to search the house occupied by appellant and his wife for "license plates" claimed to have been stolen. The warrant was invalid, being based upon an insufficient affidavit and not describing the property sought with sufficient particularity. The officers found at appellant's house no "license plates," but found a receipt for automobile license for a "Ford coupe" which corresponded in number to the license plate on the Chrysler roadster; they also found some pistol shells corresponding with those in the roadster. The search which resulted in the discovery was illegal and the evidence as to its result should have been excluded, but the error in admitting it became harmless when appellant admitted from the witness stand the possession of the receipt and shells in question. McLaughlin v. State, 109 Tex. Cr. R. 307, 4 S. W. (2d) 54; Duncan v. State, 13 S. W. (2d) 703, in which many cases are cited. There was no claim by the state that license plate No. A 41–011 was a stolen plate and that does not seem to have been the license plate for which the officers were searching.

It was evidently the state's theory that the Chrysler roadster found at the time of appellant's arrest was a stolen car, and much of the record seems devoted to solving that question. Indeed, if the indictment did not charge appellant with robbery and the judgment did not condemn him to be guilty of that offense it would be difficult to determine from the statement of facts for what offense he was on trial. Over appellant's objection the state was permitted to prove by an officer that they had "found out" that the Chrysler was a stolen car and knew from the police department records that it did not have the proper license number on it and that they were looking for the license number belonging on it. This evidence could have had but one result. It was to impress the jury with the idea that appellant was an automobile thief. The injurious effect of such evidence is apparent. The Chrysler may have been a stolen car. It was not taken at the time the robbery was committed, and when ever and by whom stolen it was no part of the robbery. We have searched this record in vain to find what light it would throw on the case under investigation to get before the jury the claim or fact—if it was a fact—that the car was stolen. The theft of it was neither res gestae of the robbery, nor tended to show intent, nor tended to connect appellant with the offense of robbery, nor tended to defeat the offense of alibi. Hence under none of the exceptions permitting

proof of extraneous crimes was it permissible to show either directly or indirectly that the Chrysler was a stolen car. Chester v. State, 108 Tex. Cr. R. 150, 300 S. W. 57 and authorities cited; Underhill's Criminal Evidence, Sec. 152, pp. 196–199; Branch's Ann. Tex. P. C., Sec. 166.

We learn from bill number ten that appellant was asked on cross examination if he ever saw a letter dated September 28th, addressed to Mrs. Shipley saying, "tell Mack (appellant) and Kathryn (appellant's wife) they had better go on clean to Mexico." As shown by the question, any such letter was written before the robbery was committed and was addressed to a third party; the writer was not disclosed and it was not shown ever to have been in appellant's possession and he denied expressly that he ever saw it. The question was highly improper. If there was any reason why appellant should go to Mexico it was because of some occurrence before the robbery had been committed.

Bill number eighteen shows that while appellant was being cross-examined the district attorney asked him if he had ever seen a telegram from Jno. W. Long, Chief of Police of Seminole, Oklahoma, to which appellant replied that he never had seen it, that it had never been turned over to him, and was neither sent nor received in his presence. It was not shown to whom the telegram was addressed. Appellant was then asked by the district attorney if he did not know that the Chief of Police of Seminole, Oklahoma, had told him that he had to get out of town or go to work. In qualifying the bill the court says the "telegram was not offered in evidence and the district attorney was only reading from a telegram held in his hand." Just how this relieved the question of its harmful nature we do not perceive. Appellant had testified to an alibi and that from May until the time he left Seminole on October 5th he had been in Oklahoma and part of the time working as a police officer in Seminole. If it was material—and from other evidence it seems to have been—the state could in a proper way rebut appellant's claim that he worked as a police officer at Seminole, but this could not be shown by a telegram from the chief of police to some third party. This seems to have been the effect of the incident complained of.

Even worse in its injurious effect, if possible, than the occurrences revealed in bills ten and eighteen, is the one reflected by bill number twenty-nine. On cross examination appellant was shown an instrument in writing and asked if he knew whose handwriting it was in. He replied that he did not know. The instrument does not appear

to have been signed by anybody. The district attorney then asked appellant "if he ever saw a communication reading like this," and proceeded to read from the instrument in question, in the presence of the jury the following:

"Mack, I think we had better not say we bought any pistol from that negro as he may get mad and say we had come there before in a Chrysler car and f—k us; as it is they have no witness that we had the car and we have all the way in the world to beat it. You were going home tonight and stay all night with me as your wife— You was going home and stay all night with me as your wife was going to stay with her sister—tell her that as we will have to use her to say we left your house walking at the same time, she left in your Ford. I don't guess we will be tried for·other cases but I sent for Lawson and will find out tomorrow."

The learned trial judge explains the bill as he did bill number eighteen that the "instrument was not offered in evidence but was read to the defendant in the presence of the jury, and he was asked if he had anything to do with it, and he replied, 'No.'" The damaging character of the instrument is apparent without comment. If it had been formally admitted in evidence the jury could have gotten no more from it than they did by the procedure permitted. There was nothing to show where the document came from, or that appellant had ever received it, or was in any way responsible for it. None of the things complained of in bills ten, eighteen and twenty-nine should have been permitted. Terrell v. State, 88 Tex. Cr. R. 599, 228 S. W. 240, in which many authorities are collated. A later case is Purvis v. State, 104 Tex. Cr. R. 408, 284 S. W. 588.

It appears from the testimony of one of the searching officers that they took from a trunk in appellant's house a bundle of papers or letters. Whether any of the written instruments referred to in bills ten, eighteen and twenty-nine were among those so obtained is not clear from the record. In view of another trial we observe that if they were so obtained it was by an illegal search and they would not be admissible against appellant. Art. 727a, C. C. P.; Carroll v. U. S., 267 U. S. 132, 69 L, Ed. 543, 39 A. L. R. 791; Weeks v. U. S., 232 U. S. 383, 58 L. Ed. 652, L. ·R. A. 1915 B, 834; Odenthall v. State, 106 Tex. Cr. R. 1, 290 S. W. 743.

Bills twenty-two and twenty-seven complain of inquiries of appellant on cross examination as to what time he was arrested and placed in jail at Wewoka, Oklahoma. There is nothing in the record to show that the arrest was upon a felony accusation or for a

misdemeanor involving moral turpitude which might make such proof admissible for impeachment purposes. Branch's Ann. Tex. P. C., Sec. 167.

We find in this record twenty-nine bills of exception. All of them have been examined. Among those not particularly discussed some are too incomplete to manifest error, some, in connection with the court's explanation, show no error was committed in the particular matter complained of, and others relate to questions not likely to arise upon another trial.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*