H. PATTERSON V. THE STATE.

No. 21369. Delivered January 15, 1941.

Rehearing Denied February 19, 1941.

The opinion states the case.

*C. C. Denman,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault to murder with malice upon one Carter Hays, and by the jury given a term of five years in the penitentiary.

The facts proven by the State reveal that two women, stepsisters, in company with a man named Jim Woodward, went to D. Brown's dine, drink and dance place in San Augustine County where beer and sandwiches were sold, and were there dancing, and there consumed certain quantities of beer. While they were thus drinking appellant, who was unknown to all but one of these persons, came up and was drinking with them. That appellant became offended at some casual remark of one of the women, and upon being told by Woodward that the woman was not speaking to him, the appellant withdrew to a further place in this establishment and sent a negro waiter over after his, appellant's, can of beer, which had been left at the first table. The women sent him not only appellant's can of beer but also one that he had purchased for them, which extra can he immediately returned, keeping his own.

About such time, in this confused condition of affairs, as they are presented to us, a State's witness testified that appellant, about an hour prior to the stabbing of the complaining witness Hays, told such witness that "he didn't like Carter Hays' damn looks."

Soon after the trouble at the table where the women were with Jim Woodward, appellant, after dancing with one of these women, finally went back into the kitchen of this establishment, where he had been employed at a previous time, and picked up a butcher knife lying on the kitchen table and put it down inside his trousers, and went back in the front of this place. Carter Hays knew one of these two women, and after appellant left the table where the women were sitting Hays went over to their table and sat down there and remained there quite awhile, drinking with them. Later he got up and went over to a counter and sat down on a stool at the bar near Estelle Atwood, one of the women first referred to herein, at which time appellant came by and struck Hays with this butcher knife, and the witness testified: "If Pat (H) Patterson said anything to me immediately before he stuck that butcher knife

in me, I don't remember it. That butcher knife went practically through my body." The appellant then went back into the kitchen and put the knife back on the table; it was covered with blood, and immediately thereafter when accused of having struck Hays with said knife denied it, with accompanying oaths. The wound collapsed the right lung and caused an infection and became a dangerous wound, so the physician said, Hays remaining in a hospital about a month. It seems that Hays and appellant were not acquainted with each other.

Appellant took the witness stand and testified that in the trouble with the women Jim Woodward seemed to have taken offense at him, and when appellant was leaving the table where the women were Woodward stood up and said: "I will see you later," and noticing a bulge about Woodward's coat, appellant reasoned that Woodward was armed, and therefore appellant went into the kitchen and possessed himself of this butcher knife. That after carrying this knife around in the dance hall for a while, appellant testified that he approached the man Hays who, seeing appellant, said: "G - d - you, I will fix you up," and "threw his hand back to his hip pocket," and appellant stabbed Hays in the chest with the butcher knife. Appellant then saw that Hays did not get anything out of his hip pocket, and he put away his knife. He did not know Hays and Hays did not know him.

Appellant offers and briefs six bills of exceptions as grounds for a reversal of this cause.

Bill of exceptions No. 1 is concerned with the following question propounded to the appellant on cross-examination: "You did not attempt to leave that place or to get away from there after Jim Woodward left the booth, did you?", which question was objected to on the ground that same was an attempt to take away from appellant his right of not being bound to retreat in order to avoid being compelled to act in his own necessary self-defense. Appellant answered "No" to the question after the trial court had overruled the objection thereto. This matter might have had some weight had appellant been charged with an assault upon Jim Woodward, but such was not the case. He claimed to have struck another and different person, not in any way connected with Woodward, because of the fact that such other person suddenly made a threatening gesture which caused appellant to think his own person was in danger. We are impressed with the thought that no error is shown by this bill.

Bill of exception No. 2 is based upon the asking of the following question to Jim Woodward by the State's attorney:

"You would not have taken Miss Bostick to D. Brown's place if you had known such a person as Pat Patterson was going to be there, would you?"

The objection being that the State was endeavoring to prove that the appellant's reputation was that of a bad man, and that the appellant had not placed his reputation in issue in any manner, and was an attempt to prejudice the defendant's cause and inflame the minds of the jury against him. At the time of such objection, the district attorney withdrew such question, and the trial court instructed the jury to disregard the same.

We are not in full accord with the fancied effect upon the minds of the jury that appellant sets forth in his objections to such question, and, in any event, we think the prompt withdrawal of the question, together with the court's instruction, removed any error that might have arisen from the mere propounding of the question.

Bill of exceptions No. 3 complains of the latter portion of the following argument of the district attorney:

"Now, let's look at the facts in this case. I will just review the testimony of the witness briefly. The first witness which the State offered was Vernie Bostick. She testified that she was at D. Brown's that night that this occurred; that she had seen Carter Hays; that Carter Hays sat at the booth where she and her boy friend, Jim Woodward, and her half-sister, Estelle Atwood, who is now in the hospital suffering from an automobile wreck and was not able to be in attendance upon this court. I only wish that she had been here. I am sure she could have told you some of the things—perhaps she could have given you testimony confirming all the other testimony offered in this case." The portion thereof objected to being the last sentence thereof.

It was shown by the evidence that Estelle Atwood was present at the time testified to by all the witnesses both for the State and the appellant. Bill No. 4 seems to be based upon a continuation of such an argument of the district attorney as follows:

"As I say, the evidence in this case is so preponderant, it is so great, it has proven so clearly and so conclusively beyond a reasonable doubt the guilt of this man that no other evidence is necessary, and the evidence of Estelle Atwood, had she been

here, would have confirmed the testimony of the other witnesses, perhaps."

And again he said:

"She was there and saw the same thing that Vernie Bostick did, according to Vernie Bostick's own testimony."

The only objectionable part of either of these two bills seems to be the statement: "The evidence of Estell Atwood, had she been here, would have confirmed the testimony of the other witnesses, perhaps."

It occurs to us that the strength of the testimony, as referred to in the first above quoted statement, is true. According to the witnesses, outside of the appellant, Hays was doing nothing to the appellant, but did not even know him, and was sitting down at a counter when appellant, without saying a word to Hays, struck Hays with this butcher knife. Appellant's own testimony shows no conversation between the two. He only says that Hays cursed him, and made a hip-pocket play, thereby causing appellant to stab Hays. The testimony did show without contradiction that the Atwood woman and the Bostick woman were together, and it would seem that it would be no violent presumption to say that what one saw the other would also see. It was also shown by testimony that the Atwood woman was in the hospital and unable to appear as a witness.

The argument that bears any objectionable weight seems to be "x x x had she (Atwood) been here, perhaps her testimony would have confirmed that of other witnesses." That such a statement was merely and entirely speculative upon the part of the attorney appears from the face of the statement, and could only have been thus understood by the jury. Every other witness, appellant included, had testified to practically the same general condition of facts, from the meeting of appellant with the woman up to the stabbing of Hays; at which latter scene, however, appellant and Hays' testimony differed as to the threat and hip-pocket movement. Since the construction of this remark lies in conjecture, same might have been interpreted to refer to appellant's testimony as well as that of the State when it was said, in substance, that the Atwood woman's testimony might perhaps have confirmed that of the other witnesses. In neither of these bills is it asserted as a fact what the testimony of this woman would have been. The word "perhaps" inserted in such statement shows that such a statement was a mere matter of guess or conjecture and not a positive statement as to

what her testimony would have been, and a mere assumption on the part of the attorney, based on the practically uncontradicted testimony of all the witnesses, including appellant, save as to the threat of Hays and the hip-pocket movement brought in by appellant.

Mr. Branch in his valuable work on the Penal Code, p. 204, Sec. 361, says:

"Before a reversal can be had on account of improper argument of State's counsel, it must clearly appear that the remarks were improper and that they were of a material character and such as under the circumstances were calculated to injuriously affect the rights of the defendant. House v. State, 19 Texas Crim. App. 239; Pierson v. State, 18 Texas Crim. App. 564; Tweedle v. State, 29 Texas Crim. App. 591, 16 S. W. 544; Frizzell v. State, 30 Texas Crim. App. 56, 16 S. W. 751; Tipton v. State, 30 Texas Crim. App. 532, 17 S. W. 1097; Hardy v. State, 31 Texas Crim. App. 293, 20 S. W. 561; Dodson v. State, 45 Texas Crim. App. 574, 78 S. W. 514; Collins v. State, 152 S. W. 1047; Walls v. State, 153 S. W. 130; Davis v. State, 154 S. W. 550; Himmelfarb v. State, 174 S. W. 589; Mooney v. State, 176 S. W. 58."

It is a general doctrine that before a reversal will be ordered on account of remarks made by the prosecuting attorney, they must be obviously hurtful and prejudicial. See 42 Tex. Jur., p. 239. It will be noted that the objected to remarks were not positively made as a fact supposedly known to the speaker. The word "perhaps" is defined by Webster's International Dictionary as "perchance, peradventure, it may be," and under such a definition we think the interpolation might be made that perchance, or maybe the witness Atwood, having been present before the jury, would have confirmed the testimony of other witnesses. We think this statement thus qualified is not subject to the offered objection that the district attorney told the jury that this absent witness would have, had she been present, confirmed the statements of the State's witnesses. This ruling disposes of bills Nos. 3 and 4.

Bills Nos. 5 and 6 relate to a request for an instructed verdict on account of the State's supposed failure to offer sufficient proof to make out a case, in bill No. 5, and No. 6 being concerned with the trial court's failure to grant a new trial because of the failure of such proof.

We think the court was correct in failing to grant such

requests. There is a sufficient showing of malice, not only expressed, as shown by the testimony of witnesses, but also from the conduct of the appellant when he spent an hour in this dance hall, armed with a butcher knife, thus evidencing, as the jury thought, a heart regardless of his duty to society, especially that in which he was moving at such time, and fatally bent on a mischief that culminated in the stabbing of this unarmed man.

We see no error shown in this record, and the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

We think that the original opinion correctly deals with all questions presented in this case which the record requires should be discussed; however, in view of the insistence in appellant's motion, and his argument on assignment of error No. One, we express the view that the question asked was wholly immaterial to any issue in the case unless it is pertinent to aid the State in proving malice. If it did so aid the State it was proper testimony for that purpose. If it did not have this effect, then we are unable to see any reversible error. It is not the intention of this court in so holding to overrule any other decisions or to render ineffective any article of the statute. We simply take the view that under the facts of this particular case the asking of the question was not reversible error, and we think the original opinion clearly expresses the court's view on the subject.

Again, complaint is made because the district attorney asked one of the witnesses the following question: "You would not have taken Miss Bostick to D. Brown's place if you had known such a person as Pat Patterson (H. Patterson) was going to be there, would you?"

Whether or not the mere asking of this question is error depends upon the circumstances surrounding it and the meaning which it would carry to the jury. As we view the circumstances of the case it is purely speculative to find that it had any effect whatever. A discussion which leads us to this conclusion would be cumbersome and probably of little aid to appellant and no contribution whatever to the jurisprudence of our State. It is sufficient to say that we will not be called upon to indulge in speculation in order to find error. To this there would be no end. The only argument made by counsel and the .

only circumstances which we could find in the record indicating error would be the penalty assessed, which is not the least which the jury might have given under the court's charge.

Counsel asserts, "There is an unbroken line of decisions in this State holding that where a defendant received more than the minimum punishment the court will not speculate upon whether or not he sustained injury." We think the decisions are misunderstood. The question of the penalty is not the only factor to consider. First, there must be something, as hereinbefore stated, which would, under the circumstances of the case, reasonably be calculated to injure the party on trial. When this is true the court will not speculate on whether or not injury did occur, particularly when the minimum penalty has not been assessed. Counsel for appellant did not favor the court with any of the authorities upon which he relies, or the expressions which he has in mind. Consequently, we are unable to help him, further than to say that the punishment is not the only factor to be considered. It is a very cogent one where it becomes a factor, but we cannot make a rule which would apply to every case and say in the event more than the minimum punishment is assessed a reversal of the case may be based upon some speculative error, which to us has no force whatever.

The motion for rehearing is overruled.