MARSHALL MORRIS v. THE STATE.

No. 23494. Delivered December 4, 1946.
Rehearing Denied January 29, 1947.

*J. D. Pickett,* of Palestine, for appellant.

*Justice, Moore & Justice,* Special Prosecutors, of Athens, *B. L. Pitman,* County Attorney, of Palestine, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for aggravated assault; punishment assessed one year in jail and fine of $500.00.

Appellant was charged by complaint and information with committing an aggravated assault upon Jimmie Gantt, he being an adult male and she a female.

It is urged that the verdict does not find sufficient support in the evidence because the testimony of Miss Gantt is contradicted in material points and that the probative force of her testimony is destroyed by an attempt on her part on the night before the trial to procure money from appellant's counsel on condition that she would stop the prosecution.

The sufficiency of the evidence being challenged calls for detailing the State's evidence at greater length than would ordinarily be thought necessary.

Miss Gantt had been in Palestine about four months and lived in the nurses home at the sanatarium where she was employed. She was acquainted with appellant, he having been a patient at the sanatarium where she had nursed him. Her evidence was substantially as follows: On the night of May 25, 1946, she had gone to a cafe where she had expected to meet some boys to go motorcycle riding. It had been raining and she missed the boys. She saw appellant and his wife, and because of the rain, asked appellant and his wife to take her home. Appellant suggested that she go with them to appellant's home, which she did. After they reached there appellant's wife opened some beer and prosecutrix drank part of one bottle, and appellant's wife drank some beer and appellant drank some liquor. Appellant mentioned that he had forgotten to bring his gun from the store, and told his wife not to let him forget it; said he had a good gun at the house and sent his wife to get it. He fired the gun although both his wife and prosecutrix requested him not to fire it. His wife took the gun from appellant and carried it into another room. When she came back she and appellant got into a fuss over appellant and "his bootlegging and just how long he could go to the penitentiary for bootlegging." Appellant said if he went to the penitentiary he would not come back to his wife, and she said it didn't make any difference to her; that she could get a divorce "automatically", and began to cry. Appellant jerked her and threw her back into the chair, and said she could go ahead and get it then. She began to cry louder and went into the bath room. Appellant then turned to prosecutrix and said, "What do you have to say about it?" to which prosecutrix replied, "It's none of my business," whereupon, appellant told her to shut up. Prosecutrix then said she had to leave. As she started to pass appellant he hit her with his fist. She staggered and fell against the door. She got up and appellant hit her again, knocking her down the second time. The first blow was about the eye and the second on the jaw. Appellant's wife came back into the room and asked appellant not to

hit prosecutrix any more, and he said, "Let the S. B. lay there." Appellant and his wife both helped prosecutrix up off the floor. He refused to let prosecutrix leave the house or to have a doctor. All three then went out of the house and prosecutrix slipped on the concrete porch and fell. Appellant jerked her up and pulled her back in the house. She commenced screaming and appellant took a towel from his wife and stuffed it into prosecutrix's mouth. At this juncture some officers came and appellant told prosecutrix, "If you say anything, so help me, I will kill you," and said to her if she told anybody what had happened he would kill her. Appellant and his wife then went into another room and prosecutrix left out the back way and went to a neighbor's house and secured Dr. Hunter to treat her injuries. The doctor testified that prosecutrix had a black eye (which was still discolored at the time of the trial some ten days later) and had bruises on her face and head; that the injuries were caused by some blunt instrument; that a blow from a fist or something similar could have caused them.

Monroe Johnson, Assistant Chief of Police of the City of Palestine, and Lester Jordan, a Highway Patrolman, had heard of some trouble at appellant's house. They saw appellant and his wife in their car on the street and asked about the trouble. Appellant told them he and his wife had picked up prosecutrix and they had gone to his house and drank some beer; that prosecutrix had became somewhat hysterical, was crying and screaming and that he "knocked hell out of her to keep her from screaming and quiet her down." Appellant did not tell these officers that prosecutrix was trying to hit him, nor that she had tried to get his wife to have dates with other men, and that he was trying to put her out of the house. This was the defensive claim upon the trial, supported by the testimony of appellant's wife. Appellant himself did not take the stand.

Appellant's counsel testified that prosecutrix came to his house the night before the trial and offered to settle the case out of court for five hundred dollars. Prosecutrix admitted being at counsel's house, but explained that her presence there was because her father had been murdered and she had been told that she would be asked about this; that she went to request counsel not to ask her about it and he promised that he would not, which promise he kept. The record shows that during the conversation something was said about settling out of court. Prosecutrix said she would have settled the case out of court but denied suggesting any money consideration. Other matters were placed in evidence by appellant which contradicted prosecutrix in some

particulars, or were to the effect that she had not reported to officers or others certain things testified to by her upon the trial.

All of the things relied upon by appellant as impeaching or contradicting prosecutrix went to her credibility and the weight to be given her testimony by the jury. The verdict returned reflects that the jury accepted her testimony. We think it is beyond the province of this court to say that the probative force of her testimony was destroyed without substituting our judgment for that of the jury upon issues of fact of which they were the exclusive judge. Art. 657 C. C. P. It follows that we decline to hold the evidence insufficient to support the verdict and judgment.

We next discuss the question raised in bill of exception number three, which is presented in appellant's brief as Point No. 4. The bill recites that while prosecutrix was on the witness stand she told about a "confusion and fuss over Marshall (the appellant) and his bootlegging," at which point in her evidence the private prosecutor said to her, "Just tell what was said," and witness replied, "Just how long he could go to the penitentiary for bootlegging." Appellant objected to the last statement above quoted and requested the court to withdraw same from the jury on the ground, as stated in the bill, "* * * that it could not throw any light on the transaction for which defendant was being tried, and was inflammatory and highly prejudicial to the defendant." The court refused to withdraw the statement, and appellant excepted to the action of the court in not withdrawing that part of prosecutrix's evidence as to "just how long he (appellant) could go to the penitentiary for bootlegging." It is noted that appellant did not object to nor seek to have withdrawn the witness' evidence that appellant and his wife got into a "fuss over Marshall and his bootlegging." We find ourselves in agreement with the general principles of law advanced by appellant to the effect that if evidence is inadmissible for any purpose a general objection will reach it, and that an independent crime is generally not provable against the accused on trial, and that a wife cannot testify against her husband save as to offenses by him against her. However, we think such legal propositions have no application here. We refer to the evidence of prosecutrix heretofore set out in this opinion as to what preceded and followed the evidence regarding appellant's bootlegging and the connection in which it occurred. It is apparent that the assault on prosecutrix grew out of and resulted from the fuss between appellant and his wife regarding his bootlegging. The facts preceding and leading up to this assault on prosecu-

trix could not be intelligently and consecutively developed without showing the conversation between appellant and his wife. It was a part of the transaction under investigation. One of the exceptions to the general rule excluding proof of other crimes is stated in 18 Tex. Jur. Sec. 33, p. 61, as follows:

"In order that a collateral crime may be relevant it must be connected with the crime under investigation as part of a general and composite transaction." Underhill Crim. Ev., 4th Ed., Sec. 182, p. 323. Illustrative cases, Chester v. State, 108 Tex. Cr. R. 150, 300 S. W. 57; Houston v. State, 112 Tex. Cr. R. 261, 16 S. W. (2d) 119; Tinker v. State, 95 Tex. Cr. R. 143, 253 S. W. 531.

Having reached the conclusion that the evidence complained of was admissible under the circumstances here present, and there being no specific objection to the evidence as violative of Art. 714 C. C. P., that question could be disposed of upon the absence of a specific objection upon that ground. However, the article has no application here; the statements of the wife having been made in the presence of prosecutrix, they were not privileged and the prosecutrix could testify regarding them. See cases annotated in Note 5 under said article in Vernon's Tex. C. C. P., on page 1044.

Appellant presented to the trial court bill of exception number one in which he complained that the County Attorney in the opening argument to the jury,—after referring to the fact that prosecutrix was an orphan—said, "If her father had been living this case would have been settled out of court." The trial judge refused the bill and prepared his own in which he certifies that the language used was, "If her father had been living this case *might* have been settled out of court." Both appellant's bill and the court's bill are supported by bystanders. Bill No. 2 recites that the County Attorney also said in the opening argument, "That the large number of persons present is proof that Jimmie Gantt has lots of friends." The trial court also refused this bill, and prepared one in lieu thereof, and both of these bills are supported by bystanders. We fail to discover any substantial difference in the bills as they relate to the remark last above referred to. All of the bills reflect that as soon as each of the statements was made appellant's counsel objected, the court promptly sustained the objection and orally instructed the jury that such arguments were improper, and that the jury should not consider them for any purpose. Notwithstanding this prompt action on the part of the court appellant reserved a bill

to the statements so made by the County Attorney as being inflammatory and prejudicial, and asserting that the effect could not be cured by the attempted withdrawal.

Appellant cites a number of cases to support his contention, among them being Masten v. State, 100 Tex. Cr. R. 30, 271 S. W. 920; McDuff v. State, 103 Tex. Cr. R. 668, 281 S. W. 1073; Atkeison v. State, 100 Tex. Cr. R. 313, 273 S. W. 595; Thompson v. State, 33 Tex. Cr. R. 472, 26 S. W. 987. Representatives for the State cite in opposition thereto Beason v. State, 84 Tex. Cr. R. 449, 208 S. W. 164; Hughes v. State, 136 Tex. Cr. R. 210, 124 S. W. (2d) 349. A comparison of these cases serves to illustrate the difficulty in applying the general rule as to such matters, as stated in Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548, and approved as late as 1941 in Patterson v. State, 141 Tex. Cr. R. 204, 147 S. W. (2d) 784. The cases also illustrate the necessity of viewing the case as a whole in passing upon the effect of a complained of argument. "The language used is not alone the test." See Vineyard (on rehearing) 96 Tex. Cr. R. 401, 257 S. W. 548, Baxter v. State, 132 Tex. Cr. R. 515, 112 S. W. (2d) 481. In Tweedle, et al (Tex. Cr. App.), 16 S. W. 544, in passing upon a bill of exception complaining of argument, the lamented Judge W. L. Davidson said: "* * * To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true." The statement is supported by reference to Bass v. State, 16 Tex. Cr. App. 62, and House v. State, 19 Tex. Cr. App. 227.

If it be conceded that counsel for the State was unfortunate in the use of the language complained of, yet considering the case in its entirety, and the prompt action of the court in sustaining the objection to the statements and directing the jury not to consider same for any purpose, we conclude that they were not of so obviously harmful character as to predicate a reversal thereon.

The question complained of in bill of exception number six is not briefed by appellant. In the absence of an affirmative statement that same is waived, the bill has been examined, and we think fails to disclose error.

The judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Within proper time after the opinion in this case was announced, appellant filed his motion for rehearing. A few days thereafter he filed an application to withdraw said motion. Before this application came on for hearing, he filed another motion asking permission to withdraw his application to dismiss, and requesting that we consider his original motion for rehearing. It was set out in the application that the Governor of Texas had granted a full pardon as to his jail sentence, and reduced the fine to One Hundred Dollars. In the last motion it is revealed that the Governor has rescinded his action.

The application to withdraw motion for rehearing is, in accordance with his last expressed wishes, withdrawn and the original motion for rehearing has been considered. We are of the opinion, however, that the original opinion properly disposed of the issues in the case, and that nothing new is raised by the motion for rehearing. Considering that a correct conclusion was reached in the original opinion, the motion for rehearing is, without further discussion, overruled.